[Civ. No. 538.   Fifth Dist.   Aug. 17, 1965.]

WILLIAM FRANKLIN MORRISETTE et al., Petitioners, v. THE SUPERIOR COURT OF KERN COUNTY, Respondent; DANIEL F. EOFF et al., Real Parties in Interest.

Edwin M. Campbell for Petitioners.

Thomas C. Lynch, Attorney General, and Ernest S. Gould, Deputy Attorney General, as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Hourigan & Smith and M. Dwain Smith for Real Parties in Interest.

CONLEY, P. J.—The welfare of three minors and the rights of their four grandparents to their adoption are at stake in this litigation. Dianne Lynn Eoff was born April 7, 1960; Lee Roy Eoff, Jr., on February 23, 1961; and Craig Leon Eoff on August 15, 1962. The mother and father of these children are dead, and the grandparents on both sides, William Franklin Morrisette and Cordelia Marie Morrisette of San Diego County, mother and father of Mrs. Eoff, and Daniel F. Eoff and Edith F. Eoff of Kern County, mother and father of the father of the children, desire to adopt them, and have filed petitions to that end, Mr. and Mrs. Morrisette in San Diego County, where they reside, and Mr. and Mrs. Eoff, where they have their residence. (Civ. Code, § 226.)

As pointed out in *Adoption of Barnett*, 54 Cal.2d 370, 376 [6 Cal.Rptr. 562, 354 P.2d 18] : "An adoption proceeding, like divorce, creates a status and is essentially a proceeding in rem. [Citations.]"

And in *Adoption of Burton*, 147 Cal.App.2d 125, 130 [305 P.2d 185], it is observed: "As the children were residents of this state, the California court had jurisdiction over them [citations], which attached at the time the petition was filed."

There can be no question but that each of the superior courts involved would have technical jurisdiction of the respective special proceedings for the adoption of the children if both were not pending contemporaneously. But it is unthinkable in a unified jurisdiction, such as our state, that the same essential controversy for the creation of a status should be heard and determined in two different courts at the same time. One or the other must yield precedence, or the possibility would exist that the courts might arrive at exactly opposite determinations. Accordingly, rules have been set up to determine which of two courts having fundamental jurisdictions of a given subject matter should first proceed. As is said in *Robinson* v. *Superior Court*, 203 Cal.App.2d 263, 267 [21 Cal.Rptr. 475] : "When superior courts have concurrent jurisdiction over the same parties and subject matter in actions instituted in each of two counties, the court in which jurisdiction of the person is first obtained is entitled to try

the cause, and a writ of prohibition may properly be issued to suspend action in the second court until the final decision of the case in the first.''

In dealing with conflicting guardianship proceedings, former Chief Justice Gibson remarked in *Browne* v. *Superior Court,* 16 Cal.2d 593, 597 [107 P.2d 1, 131 A.L.R. 276] : ''. . . where several courts have concurrent jurisdiction over a certain type of proceeding, the first one to assume and exercise such jurisdiction in a particular case acquires an exclusive jurisdiction.''

And the present Chief Justice of the Supreme Court in the opinion in *Greene* v. *Superior Court,* 37 Cal.2d 307, 311 [231 P.2d 821], enunciated this controlling principle: ''The rule making exclusive the jurisdiction first acquired is particularly apposite to prevent unseemly conflict between courts that might arise if they were free to make contradictory custody awards at the same time.''

In *Taylor* v. *Superior Court,* 47 Cal.2d 148, 149 [301 P.2d 866], it is said: ''. . . where two tribunals in this state have concurrent jurisdiction to determine jurisdiction, the question of which shall have exclusive jurisdiction shall be determined by the tribunal whose jurisdiction was first invoked, and proceedings in the tribunal whose jurisdiction was subsequently sought will, if not voluntarily stayed, be halted by prohibition until final determination of the jurisdictional question by the tribunal where jurisdiction was first laid.'' (See also *Loftis* v. *Superior Court,* 205 Cal.App.2d 148, 149 [23 Cal.Rptr. 125] ; 1 Witkin, Cal. Procedure, Jurisdiction, § 194, pp. 460-461.)

In the present enquiry, it is conceded that on December 1, 1964, the petitioners, William Franklin Morrisette and Cordelia Marie Morrisette, filed their petition for the adoption of all three children in the Superior Court of San Diego County. Immediately thereafter, the clerk of the court notified the State Department of Social Welfare in Sacramento of the pendency of the action, and that body proceeded to make an investigation of the situation, and, in due course, filed a favorable report and a consent for the adoption.

It is also established without question that on January 28, 1965, Mr. and Mrs. Eoff filed application for the adoption of these three children in the Superior Court of Kern County, the suits being numbered therein 4114, 4117 and 4118, and that immediately thereafter the clerk of the court notified the State Department of Social Welfare in Sacramento of the pendency of the proceedings; the State Department of Social

Welfare filed a report with the Superior Court of Kern County stating in a summary: "The State Department of Social Welfare finds that these adoptive petitioners are suitable as adoptive parents of the three minors, and were it not for the concurrent petition filed in San Diego County, the State Department of Social Welfare would recommend that this adoption be granted. However, the State Department of Social Welfare, believing the wishes of the natural mother, as indicated in a statement purportedly written by her, were that her mother insure the children's happiness, deems that these wishes should be followed."

The attorneys for the Eoffs caused a hearing to be set in the Superior Court of Kern County at which the negative report of the State Department of Social Welfare could be considered, and at which they asked that such report, being adverse, should be set aside, and the adoption by the Eoffs be granted as to all three children.

Following the filing of the petition for prohibition herein by the Morrisettes, further action by the Superior Court of Kern County was temporarily restrained by order of this court; at the same time, the Morrisettes were ordered not to take further action in the San Diego adoption proceedings except by later permission of this court. At the hearing to show cause why a permanent writ of prohibition should not issue, the State Department of Social Welfare appeared by leave of court as amicus curiae on behalf of the Morrisettes.

It is apparent from the foregoing statement of admitted facts that the San Diego County Superior Court, where the first petition for adoption was filed and processed, has the right to proceed to a formal determination of the question of adoption by the Morrisettes before any further action should be taken by the Kern County Superior Court, unless the observations and arguments of the Eoffs, as hereinafter noted, should effect a change in the rule that San Diego has the right of way.

One of the contentions made by the paternal grandparents is the fact that they are presently the duly appointed and acting guardians of the children. But it is clear that the existing guardianship does not give the Eoffs any preference in a proceeding for adoption, and does not prevent, or estop, the maternal grandparents in San Diego from attempting to secure for themselves the adoption of the children. (Civ. Code, § 221; *In re Santos,* 185 Cal. 127, 129-131 [195 P. 1055]; 2 Cal.Jur.2d, Adoption of Children, § 7, p. 422.)

The fact that since their birth the children have been in Kern County most of the time is similarly ineffective insofar as this proceeding is concerned. The grandparents each filed in the proper county, and as the children are residents of California the proceedings in the two counties stand on an equal footing insofar as the place necessarily selected for filing by the respective grandparents is concerned.

It is also contended by the real parties in interest that, as a condition precedent to the issuance of a writ of prohibition, there must be a showing that an attempt was made in the lower court to secure the remedy for which the petitioners pray, and that there is no allegation that the Morrisettes raised the point in the Superior Court of Kern County. It is true that there is a general rule of practice that an effort should be made in the lower court itself, if time and conditions reasonably permit, to secure the remedy sought by the writ in the appellate court. (3 Witkin, Cal. Procedure, Extraordinary Writs, § 32, p. 2504.) This is, generally speaking, a rule of good sense in that one may properly infer that the lower court would obey the law and would give necessary support to the petitioners if their contention were right. However, this is not a rule of jurisdiction, and it must yield to the facts of a given situation.

The petition for a writ of prohibition states: "That by reason of the date of the Kern County hearing having been set for June 25, 1965 [two days after the filing of the writ of prohibition] petitioners allege that in order to permit and provide a hearing on this petition for the issuance of a writ of prohibition, it is necessary that this Court issue a stay order to the Kern County Superior Court, staying all proceedings in Actions numbered 4114, 4117 and 4118 until such time as the hearing on the writ of prohibition requested herein be heard."

Thus, the contention is that there was not time to file an objection normally in the superior court, and it is further apparent that if the Superior Court of Kern County had seen fit to deny a continuance until after the disposition of the San Diego proceeding, it could have quickly proceeded to a hearing on the merits; if it had then overruled the negative report of the State Department of Social Welfare and granted the petition by the Eoffs for the adoption of all three children the only remedy would have been an appeal, involving added expense, the consumption of unnecessary time and a conflict with possible action by the San Diego court. There are exceptions to the rule of practice that an application should

first be made for a remedy to the lower court. The exceptions all focus on the facts that there is no timely and appropriate opportunity to make the objection in the court below, or that if it were made it would have been futile, or that the jurisdictional defect was apparent on the face of the pleading. (3 Witkin, Cal. Procedure, Extraordinary Writs, § 32, p. 2506.) (See also *Monterey Club* v. *Superior Court*, 48 Cal. App.2d 131, 143 [119 P.2d 349]; *Havemeyer* v. *Superior Court*, 84 Cal. 327, 403, 405 [24 P. 121, 18 Am.St.Rep. 192, 10 L.R.A. 627]; *Chaplin* v. *Superior Court*, 81 Cal.App. 367, 380 [253 P. 954].)

It appears to us that the following general rule stated in *City of Los Angeles* v. *Superior Court*, 51 Cal.2d 423, 429 [333 P.2d 745], is decisive in this case: "The writ of prohibition is an appropriate remedy to arrest the proceedings of a court when there is not a plain, speedy, and adequate remedy in the ordinary course of the law and when the proceedings of the court are without or in excess of its jurisdiction."

It is ordered that a peremptory writ of prohibition issue restraining the Superior Court of the State of California in and for the County of Kern from any further proceeding in any suit for the adoption of said minors, and particularly in cases numbered 4114, 4117 and 4118, until the completion of the hearing for the adoption of said minors in the County of San Diego in the proceeding numbered therein A5932, and until the finality of any order made in said proceeding.

Brown (R. M.), J., concurred.