[No. B070317. Second Dist., Div. Five. Nov. 24, 1993.]

THE PEOPLE ex rel. JOHN GARAMENDI, as Insurance Commissioner, etc., Plaintiff and Respondent, v.
AMERICAN AUTOPLAN, INC., et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II of the Discussion.

762

## Counsel

Rosner & Goodman and Dennis Neil Jones for Defendants and Appellants.

Daniel E. Lungren, Attorney General, Edmond B. Mamer and Richard W. Bakke, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**GRIGNON, J.**—Defendants and appellants American Autoplan, Inc., Nicholas Neu and Bruce Virga appeal from an order of the Los Angeles Superior Court issuing a preliminary injunction requested by plaintiff and respondent State of California, acting through the Insurance Commissioner, John Garamendi (the Commissioner). Appellants sought declaratory relief in Riverside Superior Court in connection with a cease-and-desist order of the Commissioner. Thereafter, the Commissioner sought injunctive relief in the Los Angeles Superior Court in connection with the same cease-and-desist order. The Commissioner's application for a preliminary injunction was granted by the Los Angeles Superior Court. Appellants contend the Los Angeles Superior Court was without jurisdiction to issue the preliminary injunction under the rule of exclusive concurrent jurisdiction. Alternatively, they argue that the injunction was not properly issued on the merits.

In the published portion of this opinion (pt. I), we discuss the rule of exclusive concurrent jurisdiction. We conclude the rule of exclusive concurrent jurisdiction is a judicial rule of priority or preference and is not

jurisdictional in the traditional sense of the word. We also conclude that the rule of exclusive concurrent jurisdiction is properly raised by demurrer or answer and requires a stay of the action; the rule of exclusive concurrent jurisdiction is not a defense to an application for a preliminary injunction. Accordingly, the trial court did not lack jurisdiction to issue the preliminary injunction. In the unpublished portion of this opinion (pt. II), we discuss the merits of the preliminary injunction and conclude the trial court properly issued the injunction. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

In 1986, Neu and Michael Gershuney were officers of a Delaware corporation, Automobile Maintenance Contracts, Inc. (AMC), engaged in the business of selling automobile repair contracts. By 1987, AMC had sold approximately 8,000 automobile repair contracts in Southern California. After an assistant commissioner for the California Department of Insurance opined that the automobile repair contracts were contracts of insurance, Neu and Gershuney moved to Northern California and operated a similar business called American Maintenance Contracts, Inc. (AMC-2).

On May 18, 1988, the Commissioner filed suit in Los Angeles Superior Court (case No. 680646) against Neu, AMC, Gershuney and others. The Commissioner requested an injunction arguing that AMC, Neu and Gershuney were violating the insurance laws by transacting an insurance business without first being admitted as an insurer in California and without obtaining a certificate to that effect; acting as an agent for a nonadmitted insurer; advertising for a nonadmitted insurer; and aiding a nonadmitted insurer to transact business in California. (Ins. Code, §§ 700, 703.) A preliminary injunction was requested to require appellants to refrain forthwith from selling any contract which violated Insurance Code sections 700 and 703. A preliminary injunction was issued on May 18, 1988, and affirmed on appeal in *People* ex rel. *Gillespie* v. *Neu* (1989) 209 Cal.App.3d 1066 [257 Cal.Rptr. 778].[1] Thereafter, Neu and Gershuney executed a December 1991 stipulation for judgment of permanent injunction, which resolved case No. 680646. In this stipulation, Neu and Gershuney denied violating the Insurance Code and agreed to refrain from violating it in the future. A judgment of permanent injunction was thereafter entered.

---

[1]This case was brought by the former Insurance Commissioner, Roxani Gillespie. We have taken judicial notice of this case.

In January 1989, Neu, Virga and American Autoplan, Inc. (formerly American Automobile Plan, Inc.)[2] began selling automobile repair contracts similar to those previously sold by AMC.[3] Neu was president of American Autoplan and Virga was vice-president. American Autoplan's repair facility was located in Riverside. The automobile repair contracts were sold as a part of a "physical damage automobile repair cost containment and insurance fraud prevention program" through insurance agents and brokers and under-written by nonadmitted carriers. Appellants solicited licensed insurance agents and brokers in California to sell the automobile physical damage benefits provided by American Autoplan; furnished and accepted applications from California agents or brokers; processed the applications; issued the contracts evidencing coverage; invoiced and collected premiums; and paid claims.

Consumers learned of the program through radio advertisements, from the lienholder on their vehicles or from their insurance agents or brokers. Many purchasers never received copies of the agreements. The program included two contracts: the automobile repair contract and a standard automobile liability insurance policy accompanied by a modified dual interest policy. Consumers paid an annual rate for the program which included the annual management fee for the automobile repair contract and the insurance premium. The premium for the insurance policy was sent by American Autoplan to Atlas Indemnity and Insurance Company, Ltd. The program covered loss to vehicles for comprehensive perils, such as fire, theft, earthquake, windstorm, rising water and vandalism and collision. American Autoplan also is a group policy holder of an automobile liability policy for its consumers.

Under the automobile repair contract, American Autoplan is appointed by the consumer as the consumer's exclusive manager and attorney-in-fact for all matters relating to repair of the consumer's automobile and as the exclusive repairer of the automobile. The contract requires the consumer to have repair work done at American Autoplan's Riverside repair facility. Consumers pay an annual management fee for the automobile repair contract which is similar to an insurance premium. Consumers also pay a service fee for each repair. The service fee is similar to an insurance deductible and is selected from three options, $250, $500, or $1,000. The service fee bears the same relation to the management fee as a deductible bears to a premium, i.e., the higher the service fee the lower the management fee.

---

[2]American Autoplan is a California corporation incorporated on April 1, 1988.

[3]For a description of the AMC program see *People* ex rel. *Gillespie* v. *Neu, supra*, 209 Cal.App.3d 1066.

A repair under the automobile repair contract has the following economic consequences:

(1) The annual management fee may be applied at American Autoplan's option to the cost of repair;

(2) The consumer pays American Autoplan the applicable service fee;

(3) The consumer assigns to American Autoplan third party recoveries up to the amount of the cost of repair;

(4) If the sum of the management fee, the service fee and third party recovery does not equal the cost of repair, the consumer agrees to pay the annual management fee for up to three years;

(5) American Autoplan is reimbursed for any excess cost by the proceeds of the companion insurance policy;

(6) If the companion insurance policy fails to reimburse American Autoplan for any excess costs, American Autoplan has the right to demand the excess from the consumer. However, in practice, consumers were not charged for such excess repair costs; and

(7) Any amounts received by American Autoplan in excess of the repair costs are retained by American Autoplan.

American Autoplan has sold tens of thousands of contracts to California residents since 1989, generating millions of dollars. The Commissioner received over 100 complaints from American Autoplan's contract holders for: shoddy repairs; lengthy delays in making repairs; and substantial delays in making settlements and in paying refunds when contracts were cancelled.[4]

On May 7, 1992, the Commissioner issued a cease and desist order directing appellants to cease and desist from doing any act which violated Insurance Code sections 700 and 703 and from violating the permanent injunction which had been issued on May 18, 1988.[5]

On June 4, 1992, American Autoplan and Neu filed a declaratory relief action against the Commissioner in the Riverside Superior Court. Virga was

---

[4]For example, it was not uncommon for American Autoplan to take as long as three to five months to repair vehicles at the Riverside facility.

[5]The May 7, 1992 cease-and-desist order states that between 1985 and 1987, Neu and John Senise operated a similar operation in New York called American Motor Club, Inc. This company sold prepaid collision service contracts. In a series of orders, the New York courts penalized the company $5 million, imposed fines on Neu and ordered restitution. The

not a party to this action. The action was served by June 10, 1992. The Riverside action alleged the Commissioner acted in excess of his jurisdiction when he issued the cease-and-desist order because the contracts entered into with consumers were not contracts of insurance. Appellants also alleged they did not unlawfully aid and abet violations of the Insurance Code and the stipulation signed by Neu in the Los Angeles action did not direct Neu to cease any conduct. The Riverside action was brought pursuant to Insurance Code section 1065.2, subdivision (c), which permits waiver of a hearing before the Commissioner and judicial review of a cease and desist order.[6]

On June 15, 1992, the Commissioner filed this action in the Los Angeles Superior Court, a three-count complaint seeking an injunction against appellants. The complaint charged appellants with transacting an insurance business without securing proper authority from the Commissioner in violation of Insurance Code section 700; aiding and abetting a nonadmitted insurer in violation of Insurance Code section 703; and violating the May 7, 1992, cease-and-desist order. The Commissioner alleged that contracts entered into by appellants with consumers were contracts of insurance, but that appellants had never obtained authority from the Commissioner to sell such insurance. It was also alleged that the cease and desist order had directed appellants to refrain from engaging in the insurance business, but appellants had continued to violate the law and had continued to violate that order. The cease and desist order was attached to the complaint.

The Commissioner contemporaneously filed an ex parte application for a temporary restraining order and an order to show cause re preliminary injunction. Appellants opposed the request for a temporary restraining order. In opposing the request, appellants contended they had not violated the insurance laws and argued that, under the rule of "exclusive concurrent jurisdiction," the Los Angeles Superior Court lacked jurisdiction to issue such an order because an action in the Riverside Superior Court was pending which involved the same matter. Appellants suggested the Los Angeles action should be stayed or transferred to Riverside. However, appellants did not bring a separate motion for stay or transfer of the Los Angeles action or file any separate pleading containing their request for affirmative relief.

---

company filed for bankruptcy and 5,000 customers filed creditor claims in the bankruptcy proceedings.

[6]The section reads in part: "At any time prior to the commencement of a hearing as provided in [Insurance Code] Section 1065.1 or subdivision (b) of this section, the person may waive the hearing and have judicial review of the order by means of any remedy afforded by law without first exhausting administrative remedies or procedures." By filing the Riverside action, appellants were asserting their rights to seek judicial, rather than administrative review of the cease-and-desist order.

The application for a temporary restraining order was argued and denied. The trial court set the matter for an order to show cause to consider if a preliminary injunction should issue. Appellants opposed the Commissioner's application for preliminary injunction, essentially repeating the same arguments presented in opposition to the application for temporary restraining order. After briefing and argument, the trial court issued the preliminary injunction.[7] Appellants appeal from the order issuing the preliminary injunction. Subsequent to the issuance of the preliminary injunction, the trial court granted appellants' motion to transfer the Los Angeles action to Riverside.[8]

## DISCUSSION

## I

### *Exclusive Concurrent Jurisdiction*

██ Appellants contend a trial court has no jurisdiction to issue a preliminary injunction where the applicability of the rule of exclusive concurrent jurisdiction is established in opposition to a request for preliminary injunction. We disagree. As we will discuss, the rule of exclusive concurrent jurisdiction is a judicial rule of priority or preference and does not divest a court, which otherwise has jurisdiction of an action, of jurisdiction. The rule of exclusive concurrent jurisdiction is similar to an affirmative defense and the remedy for its applicability is a stay of the second action. Prior to an appropriate pleading requesting such a stay, the trial court in the second action properly exercises its jurisdiction.

██ "Under the rule of exclusive concurrent jurisdiction, 'when two [California] superior courts have concurrent jurisdiction over the subject matter and all parties involved in litigation, the first to assume jurisdiction has exclusive and continuing jurisdiction over the subject matter and all

---

[7]Appellants have asked that we take judicial notice of court documents which relate to events subsequent to the issuance of the preliminary injunction. These include documents demonstrating that the Los Angeles Superior Court granted appellants' motion to transfer the case to the Riverside Superior Court. We have taken judicial notice of the fact that the matter was transferred. However, since the pleadings accompanying the motion to transfer were not before the trial court when it ruled on the application for preliminary injunction, it is inappropriate for us to consider the contents of the pleadings. Appellants have also asked that we augment the record to include documents verifying when the Riverside action was served on the Commissioner. Neither party has contested that service of the Riverside action preceded the filing of the Los Angeles action.

[8]Appellants' motion to transfer or in the alternative to stay the action was filed on August 13, 1992; the motion was granted on September 29, 1992, and appellants were ordered to pay transfer fees. The Commissioner indicates the transfer has not yet been effectuated.

parties involved until such time as all necessarily related matters have been resolved.' [Citations.] The rule is based upon the public policies of avoiding conflicts that might arise between courts if they were free to make contradictory decisions or awards relating to the same controversy, and preventing vexatious litigation and multiplicity of suits." (*Plant Insulation Co. v. Fibreboard Corp.* (1990) 224 Cal.App.3d 781, 786-787 [274 Cal.Rptr. 147].) Ordinarily, "[p]riority of jurisdiction resides in the tribunal where process is first served." (*California Union Ins. Co. v. Trinity River Land Co.* (1980) 105 Cal.App.3d 104, 109 [163 Cal.Rptr. 802].) However, the rule of exclusive concurrent jurisdiction is a rule of policy and countervailing policies may make the rule inapplicable. (*Childs v. Eltinge* (1973) 29 Cal.App.3d 843, 854 [105 Cal.Rptr. 864].)

■ The rule of exclusive concurrent jurisdiction is similar to the common law plea in abatement now codified at Code of Civil Procedure section 430.10, subdivision (c). (*Plant Insulation Co. v. Fibreboard Corp., supra*, 224 Cal.App.3d at p. 788.) ■ Under the statutory plea in abatement, "[t]he pendency of another earlier action growing out of the same transaction and between the same parties is a ground for abatement of the second action." (*Leadford v. Leadford* (1992) 6 Cal.App.4th 571, 574 [8 Cal.Rptr.2d 9].) A statutory plea in abatement requires that the prior pending action be "between the *same parties* on the *same cause of action.*" (*Plant Insulation Co. v. Fibreboard Corp., supra*, at p. 787, italics in original.)

■ "Although the rule of exclusive concurrent jurisdiction is similar in effect to the statutory plea in abatement, it has been interpreted and applied more expansively, and therefore may apply where the narrow grounds required for a statutory plea [in] abatement do not exist. [Citation.] Unlike the statutory plea [in] abatement, the rule of exclusive concurrent jurisdiction does not require absolute identity of parties, causes of action or remedies sought in the initial and subsequent actions. [Citations.] If the court exercising original jurisdiction has the power to bring before it all the necessary parties, the fact that the parties in the second action are not identical does not preclude application of the rule. Moreover, the remedies sought in the separate actions need not be precisely the same so long as the court exercising original jurisdiction has the power to litigate all the issues and grant all the relief to which any of the parties might be entitled under the pleadings." (*Plant Insulation Co. v. Fibreboard Corp., supra*, 224 Cal.App.3d at p. 788.)

■ "An order of abatement issues as a matter of right [i.e., mandatory] not as a matter of discretion [i.e., discretionary] where the conditions for its

issuance exist." (*Lawyers Title Ins. Corp.* v. *Superior Court* (1984) 151 Cal.App.3d 455, 460 [199 Cal.Rptr. 1].) This is the case whether a right to abatement exists under the statutory plea in abatement (*Leadford* v. *Leadford, supra*, 6 Cal.App.4th at p. 574) or the judicial rule of exclusive concurrent jurisdiction (*Lawyers Title Ins. Corp.* v. *Superior Court, supra*, at p. 460). Where abatement is required, the second action should be stayed, not dismissed. (*Plant Insulation Co.* v. *Fibreboard Corp., supra*, 224 Cal.App.3d at p. 792.)

 Mandatory actions of the trial court should be raised by demurrer or answer; discretionary actions should be raised by appropriate motion. (*Leadford* v. *Leadford, supra*, 6 Cal.App.4th at p. 574.) Since the rule of exclusive concurrent jurisdiction and the statutory plea in abatement are mandatory and not discretionary judicial actions, these issues should be raised by demurrer where the issue appears on the face of the complaint and by answer where factual issues must be resolved. (*Ibid.*; Code Civ. Proc., §§ 430.10, 597; *Lawyers Title Ins. Corp.* v. *Superior Court, supra*, 151 Cal.App.3d 455; *California Union Ins. Co.* v. *Trinity River Land Co., supra*, 105 Cal.App.3d 104; *Stearns* v. *Los Angeles City School Dist.* (1966) 244 Cal.App.2d 696 [53 Cal.Rptr. 482, 21 A.L.R.3d 164] [demurrer and motion to stay]; *Padula* v. *Superior Court* (1965) 235 Cal.App.2d 567 [45 Cal.Rptr. 500]; *Mungia* v. *Superior Court* (1964) 225 Cal.App.2d 280 [37 Cal.Rptr. 285]; *Robinson* v. *Superior Court* (1962) 203 Cal.App.2d 263 [21 Cal.Rptr. 475]; *Cade* v. *Superior Court* (1961) 191 Cal.App.2d 554 [12 Cal.Rptr. 847] [demurrer and motion to quash service]; *Jones* v. *American President Lines* (1957) 149 Cal.App.2d 319 [308 P.2d 393].) After it has been raised by answer, the party asserting the application of the rule may obtain a trial court ruling on the issue by a motion to dismiss or abate (*Padula* v. *Superior Court, supra*, 235 Cal.App.2d 567) or a motion for summary judgment. (*Lawyers Title Ins. Corp.* v. *Superior Court, supra*, 151 Cal.App.3d 455.)[9]

Appellate review of the issue may be sought by petition for writ of prohibition. (*Lawyers Title Ins. Corp.* v. *Superior Court, supra*, 151 Cal.App.3d 455; *Padula* v. *Superior Court, supra*, 235 Cal.App.2d 567; *Figgs* v. *Superior Court, supra*, 204 Cal.App.2d 231; *Robinson* v. *Superior Court, supra*, 203 Cal.App.2d 263; *Cade* v. *Superior Court, supra*, 191 Cal.App.2d 554; *Myers* v. *Superior Court* (1946) 75 Cal.App.2d 925 [172 P.2d 84]; *Gorman* v. *Superior Court, supra*, 23 Cal.App.2d 172; cf. *DeBrincat* v. *Mogan* (1934) 1 Cal.App.2d 7 [36 P.2d 245] [petition for writ of mandate].)

---

[9]In some reported decisions, it is not clear whether motions to abate or stay without answer or demurrer may have been brought. (*Figgs* v. *Superior Court* (1962) 204 Cal.App.2d 231 [22 Cal Rptr. 199]; *Gorman* v. *Superior Court* (1937) 23 Cal.App.2d 173 [72 P.2d 774].)

The rule of exclusive concurrent jurisdiction, as mentioned previously, is mandatory. Thus, if the conditions are met, the issuance of a stay order is a matter of right. (*Lawyers Title Ins. Corp.* v. *Superior Court, supra,* 151 Cal.App.3d at p. 460.) Frequently, the term, "jurisdictional" has been used to describe the mandatory nature of the rule. (2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 3, p. 368; *Halpin* v. *Superior Court* (1971) 14 Cal.App.3d 530, 545 [92 Cal.Rptr. 329]; *Cade* v. *Superior Court, supra,* 191 Cal.App.2d at p. 556; *Myers* v. *Superior Court, supra,* 75 Cal.App.2d at p. 929.) ██ However, "[t]he term 'jurisdiction' is used in many senses. [Citation.] The term is not synonymous with 'mandatory'. . . ." (*Neil D. Reid, Inc.* v. *Department of Health Care Services* (1976) 55 Cal.App.3d 418, 421 [127 Cal.Rptr. 685]; *In re Marriage of Harris* (1977) 74 Cal.App.3d 98, 102 [141 Cal.Rptr. 333]; *Chernow* v. *Chernow* (1954) 128 Cal.App.2d 816, 818 [276 P.2d 622].) The failure to comply with a mandatory procedural rule does not render a ruling void. (*Liberty Mut. Ins. Co.* v. *Ind. Acc. Com.* (1964) 231 Cal.App.2d 501, 509 [42 Cal.Rptr. 58]; 2 Witkin, Cal. Procedure, *supra,* at § 3, p. 368.) The rule of exclusive concurrent jurisdiction is not "jurisdictional" in the sense that failure to comply renders subsequent proceedings void. (*Stearns* v. *Los Angeles City School Dist., supra,* 244 Cal.App.2d 696; *Bank of America etc. Assn.* v. *Cohen* (1937) 21 Cal.App.2d 510 [69 P.2d 875] · [plea in abatement]; *Collins* v. *Ramish* (1920) 182 Cal. 360 [188 P. 550] [same].)

██ Trial court error in determining application of the rule of exclusive concurrent jurisdiction is reversible only where the error results in a miscarriage of justice or prejudice to the party asserting the rule. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Stearns* v. *Los Angeles City School Dist., supra,* 244 Cal.App.2d at pp. 717-718; *Bank of America etc. Assn.* v. *Cohen, supra,* 21 Cal.App.2d at pp. 512-513; *Collins* v. *Ramish, supra,* 182 Cal. at pp. 367-369.)

*Stearns* v. *Los Angeles City School Dist., supra,* 244 Cal.App.2d 696 directly addressed the issue of the validity of a trial court's actions after it erroneously failed to stay the matter under the doctrine of exclusive concurrent jurisdiction. *Stearns* involved a claim by a judgment creditor to property of the judgment debtor. A quiet title judgment was entered against the judgment creditor. In *Stearns,* the appellate court asked the following question: "Is it too late to lock the stable now that the horse has been stolen?" (*Id.* at p. 717.) *Stearns* discussed whether the quiet title judgment on appeal had led to an injustice: "It does, however, prompt inquiry to determine whether any purpose would be served by reversing the judgment entered in this case and remanding the case so that the litigation can proceed in an orderly

manner with priority in the [court which had priority jurisdiction.] If there are no errors in this record, and the evidence compels the result which has been obtained, such a reversal would appear frivolous." (*Id.* at p. 718.)

*Stearns* was based upon *Collins* v. *Ramish, supra,* 182 Cal. 360. *Collins,* a plea in abatement case, concerned a dispute over payment for tile and marble work. After a trial on the merits, the trial court found a prior action between the parties had been abandoned and was not pending. The trial court found for the plaintiff and awarded the plaintiff monetary damages. On appeal from the judgment, the defendant asserted the judgment had to be reversed and the matter dismissed because there was another action pending between the parties. The Supreme Court concluded that another action between the parties was technically pending on appeal, however, the appeal had apparently been abandoned. Even though the Supreme Court concluded there was another action pending between the same litigants, it held dismissal of the action on that ground was not warranted. "[R]egardless of this, we would not be warranted in giving a direction for dismissal or abatement of the action where it is clearly made to appear that the effect thereof would be to accomplish injustice." (*Collins* v. *Ramish, supra,* 182 Cal. at p. 367.) The Supreme Court ordered reversal of the judgment and a new trial solely on the issue of another action pending and one other issue. It held that findings on other issues would stand in connection with a new judgment.

In *Bank of America etc. Assn.* v. *Cohen, supra,* 21 Cal.App.2d 510, on an appeal from a judgment on the merits after a denial of a plea in abatement by the trial court, the appellate court determined the plea had been waived. In addition, the appellate court held reversal was not required where no prejudice or miscarriage of justice resulted. The appellate court stated: "The defendants in this action do not contend at any place in the briefs that there has been a miscarriage of justice or that prejudice resulted to them from the ruling. If the court had sustained the plea in abatement it would have resulted merely in the continuance of the case, sending the witnesses home to come back again, expense and delay. The defendants do not point out to us anything so sacred about the filing-stamp on the back of a complaint that it would justify a reversal in this court after a trial on the merits in the superior court. The date mark is not a substantial difference and judgment on either complaint if once obtained will suffice. An appellant is entitled to assign for error only such proceedings in the trial court as injuriously affect him." (*Id.* at pp. 512-513.)

In this case, we need not determine whether the trial court erred in determining that the policy considerations behind the rule of exclusive

concurrent jurisdiction were outweighed by the countervailing policy considerations in favor of trying the matter in Los Angeles.[10] We conclude appellants failed to properly request affirmative relief in the trial court by demurrer or answer or by motion to dismiss, stay or transfer; in the absence of such a request, the trial court was not without jurisdiction to rule on the merits of the preliminary injunction.

In opposition to the Commissioner's requests for a temporary restraining order and a preliminary injunction, appellants argued that exclusive concurrent jurisdiction resided in the Riverside Superior Court. The other opposition arguments were primarily on the merits of the preliminary injunction. Appellants did not file a demurrer or answer raising the issue of exclusive concurrent jurisdiction. Nor did they make a motion to transfer, stay or dismiss the action. Appellants merely raised the issue in papers opposing the preliminary injunction.

Appellants suggest that since they raised the issue at the first opportunity and in light of the need for an expeditious response to the Commissioner's request for a preliminary injunction, it is not appropriate to require their pleadings to have been in any particular form. Appellants argue that such a result would exalt form over substance. We disagree.

■ The rule of exclusive concurrent jurisdiction is not a defense to a request for a preliminary injunction. Exclusive concurrent jurisdiction is a judicial rule of policy which mandates that the second action be stayed upon the filing of an appropriate pleading. Prior to the filing of such an appropriate pleading, the trial court in the second action retains jurisdiction to act. Opposition to a request for a preliminary injunction is not such an appropriate pleading. A trial court may not stay or dismiss an action in connection with a hearing on a preliminary injunction; it is *without power to grant such relief*. (*Paul* v. *Allied Diarymen, Inc.* (1962) 209 Cal.App.2d 112, 122-123 [25 Cal.Rptr. 595].) Accordingly, even if the applicability of the rule of exclusive concurrent jurisdiction was established in the opposition to the preliminary injunction, the trial court did not have the power to grant appellants affirmative relief in the form of a transfer or stay and did not err in issuing the preliminary injunction.

Nor does the peculiar procedural posture of this case require a different result. Here, the trial court rejected the Commissioner's request for

---

[10]We note that the Los Angeles action involved in part a prior stipulated judgment of the Los Angeles Superior Court.

immediate relief by denying his request for a temporary restraining order and giving appellants additional time to file pleadings in response to the Commissioner's request for a preliminary injunction. Thus, the trial court provided appellants with an opportunity not only to address the issues raised by the Commissioner's request for the preliminary injunction, but also to plead a case for affirmative relief. Had appellants needed time to present a proper pleading, there is no indication the trial court would have denied their request. Thus, contrary to appellants' suggestion, it was not impracticable for them to properly request affirmative relief.[11] Such a proper pleading also would have permitted timely appellate review by petition for writ of prohibition.

In addition, we conclude that any error of the trial court in determining the applicability of the rule of exclusive concurrent jurisdiction does not require reversal of the order granting the application for preliminary injunction. Appellants have failed to demonstrate any injustice or prejudice to them arising out of the asserted error.

After the Los Angeles Superior Court issued the preliminary injunction, appellants successfully moved to have the Los Angeles case transferred to Riverside. The Riverside Superior Court, which appellants contend has priority, will be handling the case in the future. The Riverside Superior Court has not issued a conflicting preliminary injunction, nor has it denied a request for a preliminary injunction. Indeed, it does not appear that the Riverside Superior Court has taken any action in its case. Accordingly, no injustice or prejudice will flow from the issuance of the preliminary injunction by the Los Angeles Superior Court.

Thus, it is appropriate for us to turn to the merits of the injunction.

II

*The Merits of the Preliminary Injunction**

[11]Compare *Morrisette* v. *Superior Court* (1965) 236 Cal.App.2d 597, 602-603 [46 Cal.Rptr. 153].

*See footnote, *ante*, page 760.

## DISPOSITION

The order issuing a preliminary injunction is affirmed. Appellants shall bear respondent's costs on appeal.

Turner, P. J., concurred.

**ARMSTRONG, J.**—I concur in the judgment:

I am of the view that the appellants properly raised the exclusive concurrent jurisdiction issue in the trial court, and that the trial court met the issue head on. The trial court correctly recognized that the rule of exclusive concurrent jurisdiction is a policy rule designed to prevent unseemly conflicts between courts and to protect litigants from the expense and harassment of multiple litigation. Because it is a policy rule, the application of the rule in a given case depends upon the balancing of countervailing policies. (*Childs* v. *Eltinge* (1973) 29 Cal.App.3d 843, 854 [105 Cal.Rptr. 864].) The record establishes that this case is an exceptional case involving important issues of public policy relating to the regulation of insurance, the prompt enforcement of the California insurance laws by the commissioner and the protection of the public from those engaged in the unauthorized transaction of insurance business. In view of these strong countervailing policies, the trial court concluded that the exclusive concurrent jurisdiction rule should not be applied in this case at this stage of the proceedings to defeat the injunctive relief to which the commissioner is clearly entitled. I agree and would affirm the jurisdictional ruling on that ground.