Filed 2/7/14  Speier v. Superior Court CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEVEN M. SPEIER<br><br>　Petitioner,<br><br>　　v.<br><br>THE SUPERIOR COURT OF RIVERSIDE COUNTY,<br><br>　Respondent;<br><br>PING XI LOU,<br><br>　Real Party in Interest. | G049096<br><br>(Super. Ct. Nos. RID 230814 consol. with RIC 534024)<br><br>O P I N I O N |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Riverside County, L. Jackson Lucky IV, Judge.  Petition denied.

Shulman Hodges & Bastian, Leonard M. Shulman and Samuel J. Romero for Petitioner.

No appearance for Respondent.

Judith E. Hoover and Amanda M. Francuz; Grobaty & Pitet, and Christopher L. Pitet, for Real Party in Interest.

\*　　　　\*　　　　\*

A receiver has filed an appeal from a minute order discharging him. His appeal is premature, because the order he has appealed from is not even a final disposition of a collateral matter, much less an appeal from a final judgment. Special circumstances, however, favor addressing the merits of the appeal by treating it as a petition for writ of mandate. The case, as far as the receiver is concerned, is at a standstill, with the trial judge expressly waiting for an appellate court decision on the subject of whether the receiver's original appointment was void for lack of subject matter jurisdiction. The judge is waiting for an appellate decision on the question of subject matter jurisdiction before he tackles the merits of the receiver's final report and request for fees.

In brief, here is our determination: The receiver was appointed in a shareholder derivative suit brought by a husband against the wife to administer two 100 percent community-owned corporations pursuant to a stipulation entered into by the husband and wife. However, two months before the husband's shareholder derivative suit, the wife filed a family law action. Under the rule of exclusive concurrent jurisdiction, the family court had exclusive jurisdiction over what was, in substance, the issue of control and management of community property during the pendency of the family law action. However, the rule of exclusive concurrent jurisdiction rendered the appointment of the receiver not void, but simply voidable. The order appointing the receiver was thus not void for lack of subject matter jurisdiction. Even so, after the shareholders' derivative action was consolidated with the family law action, the trial judge was well within his discretion to discharge the receiver, especially since the appointment of receivers in family law cases (while allowed) is disfavored. The trial judge was also correct to note, in the proceedings which led to the discharge order, that the receiver should be paid for the reasonable value of his services, regardless of whether the original appointment order was valid or void. With our determination, the case may

2

now be returned to wrap up the receiver's involvement in the community businesses of the Lous.

## I. FACTS

In June 2009, Wife filed a petition for dissolution (case RID 230814, or "the 814 family law case").[1]  Husband and Wife were the 100 percent owners of the stock in two family corporations, Great China International, Inc., and Chiam Pets Direct, Inc.  Great China imported pet food goods from China; Chiam distributed it.  Husband and Wife owned all stock in the two businesses.  The record indicates Husband and Wife alternated between one being in China while the other managed the American corporations.  At the time of the dissolution petition in 2009, it was Wife who was running the domestic corporations and Husband who was handling the Chinese end of the business.

A little more than two months after the 814 family law case was filed, in August 2009, Husband filed a separate civil case seeking damages as a shareholder for the Wife's mismanagement of the two corporations (RIC 534024, or "the 024 shareholder's derivative action").[2]  This "shareholder's derivative" suit was nothing other than one 50 percent shareholder suing the other 50 percent shareholder.

Wife hired separate counsel from her dissolution counsel to respond to the suit.  Instead of filing a motion to stay the 024 shareholder's derivative action on the ground it was an improper attempt to seek relief in the civil courts for what was already a family law matter involving the management of community property and its possible

---

[1]    The briefs identify the parties differently.  The respondents' brief of Ping Xi Lou refers to herself as "Patty" and to her husband Yi Hui Lou as "Henry."  This has the advantage of symmetry and is, further, common practice in family law opinions.  The appellant's brief of receiver Steven M. Speier refers to the parties as "Ping" and "Henry," which is not symmetrical.  Ordinarily, we would prefer Ping Xi Lou's "Patty" and "Henry."  However, in this case, to emphasize its essential family law nature, we adopt the convention many family law cases have used over the years and call the two spouses "Husband" and "Wife."

[2]    Readers should note that it is the "shareholder's derivative action" singular, not, as usual, a "shareholders' derivative action" plural.  In this case there is exactly one shareholder – a husband – who sued the other shareholder – his wife.

waste (cf. *d'Elia v. d'Elia* (1997) 58 Cal.App.4th 415, 417 ["Once again this court confronts a family law case which has been allowed to metastasize into something else."]), Wife attempted to obtain a restraining order in the 024 shareholder's derivative action, then – just before the restraining order request was set to be heard – stipulated with the Husband to the appointment of Steven Speier as a receiver to manage both companies. Pursuant to the stipulation, a formal order filed October 30, 2009 was filed in the 024 shareholder's derivative action appointing Speier as receiver of both Great China and Chiam Pets.

As one member of this panel wrote in *In re Marriage of Barth* (2012) 210 Cal.App.4th 363, 365, "be careful what you wish for." By June of 2010, the receiver proposed to file a cross-complaint in the 024 shareholder's derivative action to sue both Husband and Wife for their various attempts to take or otherwise use the property of the two community corporations, though the record we have indicates the pleading was never formally filed. But whatever the fate of the receiver's cross-complaint, relations between the receiver and Husband and Wife had clearly broken down. In his proposed cross-complaint, the receiver alleged Wife had absconded with corporate mail, bank accounts and various corporate binders, while he also alleged that Husband was trying to set up his own competing business using trademarks owned by the two corporations. The receiver also spent a good portion of 2011 seeking to hold Husband in contempt.

A year later, in June 2011, Wife, now represented by new counsel in the 814 family law case, filed a motion to consolidate the 024 shareholder's derivative action with the 814 family law case. The motion was scheduled for late September, but in the interim, the receiver and Husband reached a "settlement and compromise" (in the 024 shareholder's derivative action). The gravamen of this settlement was that Husband would transfer his half of the community interest in two pieces of real property to the "receivership estate." Wife, however, opposed the receiver's motion to approve the settlement, arguing the receiver was undervaluing the damage Husband had done to the

4

community businesses.[3]  Moreover, Wife pointed out that the settlement entailed putting lis pendens on community properties, and there was as yet no division of the community estate.

In mid-September, about two weeks before the consolidation motion was scheduled to be heard, a commissioner in the 024 shareholder's derivative action approved the settlement with Husband, including a provision authorizing the receiver to liquidate the two pieces of real estate.  However, the minute order also notes the motion was granted "pending family law court proceedings."  (As we shall see, family law proceedings did indeed interpose themselves between the commissioner's order and the proposed liquidation.)

The motion to consolidate was finally heard September 29, 2011, when Judge Lucky found that "the property at issue" in both the shareholder's derivative action and the 814 family law case was community, and under the jurisdiction of the family law court.  In January 2012, Wife filed a motion in the now-consolidated action to discharge or alternatively replace the receiver, scheduled for hearing in mid-March.  Among other derelictions of the receiver, Wife charged that he had failed to provide statutorily-required inventories and reports.

In February 2012, with Wife's discharge motion pending, the receiver filed a motion seeking various orders, including approval of the sale of the real property ostensibly approved in the 024 shareholder's derivative action back in September.  He also (again the *Barth* case is apropos) sought to hold *Wife* in contempt for not cooperating with the proposed sale.  The receiver reiterated a continuing theme in  his papers that neither Husband nor Wife had cooperated with him in the appointment of his duties. Wife opposed the receivers' motion, pointing out that the sale of the two pieces of real

---

[3]       For example, Wife alleged that Husband continued to act as liason with JH Industries Ltd., a Chinese company also owned by Husband and Wife that acts as a supplier to Great China.

5

estate would, to say the least, complicate the equal division of the community estate in the family law court.

In late February the receiver opposed Wife's motion to discharge, alleging Wife had violated her fiduciary duties to the two companies. For her part, Wife brought a motion with accompanying ex parte request to shorten time so it could be heard on March 12, 2012, seeking to be named in control of Great China's assets in China. Wife was particularly displeased with the receiver's inaction with regard to protecting Great China's interests in China. For his part, the receiver asserted the court in the 024 shareholder's derivative suit had already rejected the arguments against disposing of the two pieces of real estate and in fact the court in the 024 shareholder's derivative suit had unambiguously directed him to liquidate those properties.

It appears that on March 12 the trial court, having read this court's decision in *Askew v. Askew* (1994) 22 Cal.App.4th 942, raised on its own the question of whether the order appointing the receiver in the first place was void.[4] In response to the court's sue sponte question, the receiver filed points and authorities defending his appointment and arguing the corporations *themselves* were not community property, only the stock in them. Wife was now happy to argue, citing *Askew*, that the receiver's original appointment was void. The receiver responded by asking the court to take judicial notice that both Husband and Wife had stipulated to the receiver's appointment.

The issue of the court's jurisdiction in the 024 shareholder's derivative suit to appoint a receiver was debated at the March 26 hearing. The judge sensed he had an issue that was going up on appeal, and it is clear he took the time to afford everyone the opportunity to completely air their case.[5] He clearly wasn't looking for an excuse to

---

[4]    We say "appears" because the appellant receiver has not furnished us with either a copy of a minute order from March 12 or a reporter's transcript of proceedings that date.

[5]    "The Court:  There's a lot to read, and there's going to be a lot of transcript to read, possibly.  And what I really want to do is allow the Court of Appeal, if it does review my decision, to have something that's a little more easily understandable."

deprive the receiver of his fees. He indicated the receiver would be paid, even if the appointment were void.[6]

In the end, he concluded that the order of October 30 in the 024 shareholder's derivative action appointing a receiver "adversely affect[ed] this Court's ability to do its job." The minute order of that date states: "Motion for discharge receiver is granted based on the court finds that the 10/30/09 order in the civil department appointing the receiver was void lack of subject matter jurisdiction." The receiver's attempt to dispose of the two pieces of real estate was held to be moot. On May 18, 2012, the receiver appealed from the March 26, 2012 minute order.

Ordinarily, our narrative would stop with the order from which this appeal is taken. An epilogue, however, is required, as it bears on the problem of appealability and how this court should proceed in the wake of our determination the appeal is premature. On April 26, 2012, a month after the trial court's order discharging the receiver, the receiver filed his motion to approve his final report and obtain his "final fees." The court, however, on July 3, 2012, made no ruling on the request to approve the report and award the receiver his final fees. Significantly, the court found "the appellate court decision may directly affect the resolution of the receivers motion."

## II. DISCUSSION

### A. *Appealability*

To both parties' credit, they have paid substantial attention to the problem of appealability. The receiver asserts the March 26, 2012 order is appealable; the Wife says no. Often in dubious cases the issue is given only perfunctory treatment. Not here.

On the appealability score, Wife has the better end of the disagreement. It is of course well established that appealability is a statutory matter, i.e., a would-be

---

6       "The Court: [speaking to the receiver's counsel] But I agree with you that to absolve the company or the community estate or the petitioner and the respondent for fees for services rendered upon their stipulation, whether I find that the civil court was lacking subject matter jurisdiction to the make the appointment, I tend to agree with you that if I find the order to be void, that does not mean that the receiver doesn't get paid."

7

appellant must find authority to appeal in a statute. Here, the relevant statute is section 904.1 of the Code of Civil Procedure (section 904.1). Section 904.1 enumerates the kinds of trial court determinations that qualify for appellate review. Section 904.1, subdivision (a)(7) authorizes appeals from an order *appointing* a receiver, but nowhere does the statute authorize an appeal from an order *discharging* a receiver. The dichotomy was confronted by our Supreme Court in *Hibernia Sav. & Loan Soc. v. Ellis Estate Co.* (1932) 216 Cal. 280, construing a predecessor version of section 904.1. In a short opinion (the dissent is about twice as long as the majority opinion), the high court reasoned that in the case before it, an order vacating an order appointing a receiver – "in effect, amount[ing] to a discharge of the receiver" – was "of such finality on that phase of the as to be appealable as a final judgment within the meaning of" the predecessor statute. (*Hibernia, supra*, 216 Cal. at p. 282.) This "final judgment," the court also noted, was a "collateral matter distinct from the general subject of [the] litigation" because it was "final" as to that collateral matter. (*Id.* at pp. 281-282.) Not surprisingly, then, when *Hibernia* was discussed in *City and County of San Francisco v. Shers* (1995) 38 Cal.App.4th 1831, 1836, the opinion characterized *Hibernia* as standing for the proposition that "an order discharging a receiver is appealable *when it has the effect of being a final judgment.*" (Italics added.)

       *City and County's* characterization of *Hibernia* was wholly correct. In *Hibernia* itself the whole receivership issue was wrapped up quite quickly: A savings and loan sued to foreclose a mortgage, a receiver was appointed ex parte over the property on the very day the complaint was filed, then (as we learn from the dissent, see *id.* at page 282, dissenting opinion of Preston, J.) within the month the defendants moved to discharge the receiver and rescind the order appointing him, the court granted the motion and directed the receiver to pay to the defendants the moneys he had collected, and from that order the receiver appealed. The whole process took less than 28 days. (*Id.* at p. 283.) The receiver obviously did not have time to incur much in the way of fees and

expenses, and, in any event, the issue of claim by the receiver for fees is not to be found in either the majority or dissenting opinions. Under such circumstances the majority could naturally use the phrase "of such finality" in relation to the collateral matter of the appointment of the receiver. (See *id*. at p. 282 [maj. opn.].) Along the lines of *Hibernia's* finality language, it has been established in numerous other "collateral matter" appeals that to be appealable as a collateral matter, the court's action must be *final* as to that collateral matter. (See *People v. Hernandez* (2009) 172 Cal.App.4th 715, 720.)

In this case, however, it cannot really be said that, all things considered, the March 26 order was truly "final" as to the collateral matter of the receiver's role in the management of the community property businesses. There are still miles to go before the role of the receiver in this family law matter can be put to sleep. The idea that it *was* final necessarily rests on the proposition that the order discharging the receiver is final in and of itself, even if it leaves for the future the inevitable issues concerning the receiver's final report and request for fees. But that's parsing finality too finely, and would lead to the anomaly that the receiver in this case might have no less than two appeals (first from the order of discharge, then from the order evaluating his report and fixing his fees), when the owners of the corporations – Husband and Wife themselves – would only get one appeal.

B. *Treat as Writ Petition*

In cases of premature appeals, this court has the discretion to treat them as petitions for writ of mandate if there are circumstances that warrant such treatment. (E.g., *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 746 ["the case in its present posture presents unusual circumstances making it appropriate to ascertain from the record whether there are substantive errors that the Court of Appeal should, by writ, order the trial court to correct"].) In the present case such circumstances do warrant treatment as a writ petition: The receivership is a genuinely "collateral" matter to the family law case, but its resolution is currently stuck on the problem of whether the

9

original appointment was void ab initio. Treatment of this appeal as a petition for writ petition can break the logjam.

## C. *Exclusive Concurrent Jurisdiction*

In *Askew*, just as in the present case, one spouse filed a dissolution action, then some months after the dissolution action was filed, the other spouse filed a civil action affecting what *might* have been the couple's community property. (*Askew, supra*, 22 Cal.App.4th at p. 946.)[7] In *Askew*, the substance of the civil action was nothing less than a "heart-balm" suit based on the "fraud" allegedly committed by one spouse when she lied in making various promises attendant upon their marriage including promises of love and sexual desire (see *id*. at p. 953, fn. 17), and much of the opinion was devoted to making the point that the plaintiff in the civil suit was suing on what was, in essence, a cause of action long since abolished by the Legislature. (*Id*. at pp. 954-961.) The "unsexy remainder" of the case, as the court called it (see *id*. at p. 961), required the court to address the topic of the civil court's jurisdiction to consider the civil fraud/heart-balm action. In holding the civil court didn't have "jurisdiction," the *Askew* court focused on the potential inherent in the civil case for the *disruption* of the family law court's then ongoing authority to divide community property. (See *id*. at pp. 961-964.)

While the *Askew* court did not explicitly say it, implicit in its "jurisdiction" rationale was the determination the family law court had exclusive concurrent jurisdiction over the later-filed civil fraud action. The doctrine of exclusive concurrent jurisdiction essentially holds that in multiple actions involving the same subject matter and parties, the first superior court to assume jurisdiction over the subject matter has exclusive jurisdiction. (See *People ex rel. Garamendi v. American Autoplan, Inc.* (1993) 20 Cal.App.4th 760, 769-770.) The appropriate procedural remedy to enforce the doctrine is

---

[7] In that sense *Askew* applies to this case a fortiori. In *Askew* the after-filed civil case was without "jurisdiction" – as we shall soon show that is probably too strong a word – to affect the disposition of certain trusts which *might* have been community. (See *Askew, supra*, 22 Cal.App.4th at p. 965.) In the case before us there is no question that Great China and Chiam Pets *are* 100 percent community businesses.

10

for a party in the second action to request it be stayed pending the first. (*Id.* at p. 769 ["The rule of exclusive concurrent jurisdiction is similar to an affirmative defense and the remedy for its applicability is a stay of the second action."].)

But it is important not to take the word "jurisdiction" in the doctrine of exclusive concurrent jurisdiction too literally. Perhaps "primacy" would be a better word. The doctrine of exclusive concurrent jurisdiction is *not* one which divests the second court of any authority to act – far from it. (See *County of San Diego v. State of California* (1997) 15 Cal.4th 68, 88 ["a court's erroneous refusal to stay further proceedings does not render those further proceedings void for lack of jurisdiction. As we explained . . . a court that refuses to defer to another court's primary jurisdiction 'is not without jurisdiction.'"].) As the *Garamendi* court aptly explained it, the doctrine of exclusive concurrent jurisdiction is not an inflexible boundary line that prevents the second court from acting, but "a rule of policy and countervailing policies may make the rule inapplicable." (*Garamendi*, *supra,* 20 Cal.App.4th at p. 770.)

Nothing this court said in *Askew* is to the contrary. *Askew's* point is that in the context of first-filed family law cases, the *policy* of exclusive concurrent jurisdiction has a special force so as to – as the trial judge here correctly perceived – prevent the later-filed civil action from interfering with the family court's task of properly dividing the community property. (See *Askew, supra*, 22 Cal.App.4th at p. 965 ["The entire civil action is predicated on an assumption – the separate character of the five pieces of property – which was, as we have just explained, is going to be tested in the family law court. The expense associated with the civil action was completely avoidable. Ronald should have waited for the family court to decide the issue first."].)

We thus must conclude the appointment of the receiver in the 024 shareholder's derivative action was not void for lack of subject matter jurisdiction. (See *Garamendi, supra*, 15 Cal.4th at p. 769 ["Prior to an appropriate pleading requesting such a stay, the trial court in the second action properly exercises its jurisdiction."].)

11

Even so, testing the order actually made as distinct from the reason actually given, there can be no doubt the trial judge was within his discretion to discharge the receiver. A family law court, like a civil court, has authority to appoint a receiver. (Fam. Code, § 290; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2013) ¶ 5:122, p. 5-51 ["As in civil actions generally, the court may appoint a receiver in extraordinary cases to hold and protect property from risk of undue dissipation or absconding by either spouse while the proceeding is pending."].) But it is also clear receivership is a disfavored remedy. (*Id.* at ¶ 5:123, p. 5-52.) Family courts have, among other tools to prevent the dissipation of community businesses pending trial, the power to:

– issue restraining orders directly preventing dissipation of community property (Fam. Code, § 2045);

– hold a spouse in contempt who violates such an order (Fam. Code, § 290);

– charge a spouse with temporary possession and control of community property with any loss for failing to preserve it (*In re Marriage of Kochan* (2011) 193 Cal.App.4th 420, 433 [where spouse had control and occupancy of family residence, court could properly charge him with the loss from the "nonsale" of the house attributable to him]; and

– use an alternate valuation date so the in-spouse has an incentive to preserve, rather than dissipate, a business pending trial (Fam. Code, § 2552, subd. (b)).

That said, as the trial judge plainly indicated, there is no doubt the receiver has a valid claim for the reasonable value of his services. (See *John H. Spohn Co. v. Bender* (1937) 18 Cal.App.2d 447, 451 [noting series of cases where "receivers were allowed compensation notwithstanding their appointments were void by reason of existing facts creating a *quasi* estoppel"]; cf. *Macmorris Sales Corp. v. Kozak*

12

249 Cal.App.2d 998, 1003 ["The record supports the finding of the trial court that the receiver properly discharged the duties of his office. He is therefore entitled to reasonable compensation for his trouble.].) In further proceedings the parties can litigate the issue of precisely what the receiver's reasonable compensation should be. We need not do it now – and in fact the incompleteness of the record on that very issue underscores exactly why we consider this appeal to be premature.

### III. DISPOSITION

Treating this premature appeal as a de facto writ petition to vacate the March 26, 2012 order discharging the receiver, the petition is denied. Rather than award costs now, the family law court will have power to apportion such appellate costs as this proceeding may have generated as it thinks bests fit the interests of justice.

BEDSWORTH, ACTING P. J.

WE CONCUR:

MOORE, J.

FYBEL, J.

13