Filed 5/3/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ASHLEY SHAW et al., | |
|     Petitioners, | |
| v. | |
| THE SUPERIOR COURT OF CONTRA COSTA COUNTY, | A163263 |
|     Respondent; | (Contra Costa County Super. Ct. No. C-20-01407) |
| BEVERAGES & MORE, INC., | |
|     Real Party in Interest. | |

Petitioners brought a representative suit under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code,[1] § 2698 et seq.). They conceded that their suit arises from the same facts and theories as another PAGA action pending in Los Angeles. While their petition for judicial coordination (Code Civ. Proc., § 404) with the Los Angeles PAGA suit was pending, the trial court in this case stayed petitioners' suit. After the petition for coordination was denied, the trial court denied petitioners' motion to lift the stay, concluding that the stay was warranted under the doctrine of exclusive concurrent jurisdiction. In this

_____

[1] Unless otherwise specified, subsequent statutory references are to the Labor Code.

1

writ of mandate proceeding, we find that the trial court did not err in applying the exclusive concurrent jurisdiction rule to this dispute. We therefore deny the petition for a peremptory writ of mandate.

## BACKGROUND

Petitioners' operative first amended complaint in this representative action alleges PAGA-only claims. They contend that defendant Beverages & More!, Inc. (BevMo) maintains a policy that requires the presence of two persons in any store while open (the two-person policy). The two-person policy regularly requires employees to forgo off-duty, uninterrupted meal and rest periods, or, alternatively, premium pay for noncompliant meal and rest periods. As a result of this policy, BevMo failed to pay overtime wages (§§ 510, 1194); failed to provide off-duty meal periods (§§ 226.7, 512); failed to make available off-duty rest periods (§ 226.7); failed to pay all wages due upon termination (§§ 201–203); failed to provide compliant wage statements (§ 226, subd. (a)); and failed to maintain payroll records (§ 1174). Petitioners gave notice to the Labor and Workforce Development Agency (LWDA) under PAGA on July 21, 2020, and they seek to represent aggrieved employees "who have worked for Defendant[] at any time since one year prior to the filing of the PAGA Notice to the trial in this action."

More than a year before petitioners filed suit, Tatiana Paez filed a PAGA representative action against BevMo in Los Angeles County (*Paez*). Paez sued, in part, over the two-person policy. The claims in *Paez* that overlap with petitioners' claims are

2

failure to pay overtime wages (§§ 510, 1194); failure to provide off-duty meal periods (§§ 226.7, 512); failure to make available off-duty rest periods (§ 226.7); failure to pay all wages due upon termination (§§ 201–203); failure to provide compliant wage statements (§ 226, subd. (a)); and failure to maintain payroll records (§ 1174). *Paez* also includes claims for failure to pay minimum wage (§§ 1182.12, 1194, 1197, 1198); failure to pay wages during employment (§ 204); failure to pay costs of medical or physical examination (§ 222.5); failure to provide suitable seating (§ 1198; Cal. Code of Reg., tit. 8, § 116.11070(14)(A)); failure to reimburse necessary business expenses (§ 2802); and failure to provide safety devices and safeguards (§§ 6401, 6403). Paez brought an action on behalf of herself and current and former "aggrieved employees" who worked for BevMo in California as non-exempt employees and who received at least one wage statement at any time from one year prior to June 25, 2019, until judgment.

BevMo sought to stay the proceeding in this case under the doctrine of exclusive concurrent jurisdiction and under the court's inherent authority. Petitioners filed a petition to coordinate this case with *Paez* and asked for appointment of their counsel as "liaison counsel" for the aggrieved employees. In their respective filings in the coordination proceeding, petitioners and BevMo agreed that the PAGA claims in this case overlap completely with those in *Paez*.

While the petition for coordination was pending, the trial court in this matter granted BevMo's motion to stay. The court

3

found that the pending coordination petition did not limit its power to decide the motion because the coordination motion judge's power to issue a stay supplemented, but did not displace, the trial court's power under Code of Civil Procedure section 128 and its inherent judicial authority.  The court then applied the doctrine of exclusive concurrent jurisdiction, rejecting petitioners' argument that the doctrine does not apply in PAGA cases.  The court issued an order staying the proceeding until one of the following occurred:  "a. The Paez action . . . is finally resolved by judgment, settlement, or otherwise. [¶] b. The coordination motion judge or, if Plaintiffs' petition is granted[,] the coordination trial judge, issues an order that the stay is lifted in whole or in part. . . . [¶] or c. The Court enters a further order upon the noticed motion of either side."

Paez and BevMo opposed the petition for coordination and for appointment of liaison counsel, and the coordination motion judge denied petitioners' requests.  The coordination judge found *Paez* could not be coordinated with petitioners' suit because the trial judge in the Los Angeles action had determined that *Paez* was not complex, and the coordination judge declined "to depart" from that decision.  The coordination judge also found that, even if *Paez* were complex, the standards for coordination were not met for a variety of reasons, including that common questions of fact and law did not predominate given *Paez*'s breadth; *Paez* was at a more advanced stage in the litigation; the convenience of the parties, witnesses, and counsel did not favor coordination in either location; counsel in *Paez* were vigorous advocates; the stay

4

of petitioners' case meant that coordination was not required for judicial economy or to avoid duplicative rulings; and, a settlement of *Paez* would resolve this case, but the addition of more parties and attorneys might inhibit settlement.

While their petition for coordination was pending, petitioners filed a motion to intervene in *Paez*. The trial court denied their motion, finding that petitioners did not have an interest in *Paez* sufficient to justify intervention. The *Paez* trial court further found that even if petitioners did have such an interest, petitioners represented the LWDA's interests, and the *Paez* plaintiffs adequately represented those interests.

Petitioners next moved to lift the stay in this case. The argument they presented in their motion was that the rule of exclusive concurrent jurisdiction did not preclude the trial court from lifting the stay because countervailing policies rendered the doctrine inapplicable. They also argued that the doctrine of collateral estoppel shields defendants from vexatious litigation under PAGA, and PAGA does not prohibit concurrent PAGA representative suits from proceeding simultaneously.

After a hearing, the trial court denied the motion. As an initial matter, the court "agree[d] with plaintiffs that application of the rule [of exclusive concurrent jurisdiction] is discretionary," and observed the "question is whether the Court should exercise its discretion to apply the rule in the case at bar." Deciding that it should, the court rejected petitioners' argument that not lifting the stay would "significantly impair" PAGA's enforcement mechanism. The court found that, "while PAGA claims may

5

sometimes be enforced through multiple overlapping lawsuits, it does not logically follow that limiting enforcement to a single lawsuit constitutes impairment."[2] The court then cited a number of policy considerations supporting application of the rule of exclusive concurrent jurisdiction, which petitioners did not address. It noted that petitioners did not "dispute that it would be inefficient for the same PAGA claims to be litigated simultaneously in two courts, etc." The court also found that the doctrine of res judicata, which petitioners claimed was a remedy for duplicative lawsuits, "only emphasizes the inefficiency of allowing the two actions to proceed simultaneously. All work done in this action would be rendered moot by res judicata if, as appears likely right now, the same claims in the *Paez* action are decided first."[3] Finally, the court noted that, in denying petitioners' request to intervene, the *Paez* court left "the door ajar" to a subsequent showing that a later settlement may be inadequate and therefore justify intervention. Accordingly, the court concluded that "the considerations supporting application of

---

[2] The trial court remarked that the coordination judge "found that the *Paez* action actually constituted a better enforcement mechanism than the case at bar."

[3] Petitioners also argued below that the court should consider the following as countervailing policy factors: petitioners had a strong case, excellent witnesses, and highly experienced counsel. The court found petitioners failed to show that they had a stronger case, better witnesses, or more competent counsel than the plaintiffs in *Paez*, and petitioners do not repeat this argument in their writ petition.

6

the rule of exclusive concurrent jurisdiction outweigh the considerations supporting a lifting of the stay."[4]

## DISCUSSION

At issue in this writ petition is whether the trial court erred in applying the doctrine of exclusive concurrent jurisdiction to this PAGA representative suit. Before turning to this question, we briefly review the applicable legal principles.

### I. Legal Background

#### A. PAGA

" ' " The State's labor law enforcement agencies—the [LWDA] and its constituent departments and divisions—are authorized to assess and collect civil penalties for specified violations of the Labor Code committed by an employer." ' [Citation.] In 2003, citing inadequate funding for enforcement of labor laws, the Legislature enacted PAGA to 'authorize[] an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees, with most of the proceeds of that litigation going to the state.' [Citation.] The statute was intended ' "to punish and deter employer practices that violate the rights of numerous employees under the Labor Code." ' " (*Wesson v. Staples the Office Superstore, LLC* (2021) 68 Cal.App.5th 746, 759–760.)

---

[4] BevMo's requests for judicial notice of the LWDA notice and complaint filed on behalf of Michael Garner are denied on the grounds of relevance. The court will take judicial notice of the existence of the court records submitted with petitioners' request for judicial notice.

7

" 'Under this legislation, an "aggrieved employee" may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations. [Citation.] Of the civil penalties recovered, 75 percent goes to the [LWDA], leaving the remaining 25 percent for the "aggrieved employees." [¶] " 'Before bringing a civil action for statutory penalties, an employee must comply with Labor Code section 2699.3. [Citation.] That statute requires the employee to give written notice of the alleged Labor Code violation to both the employer and the [LWDA], and the notice must describe facts and theories supporting the violation. [Citation.] If the agency notifies the employee and the employer that it does not intend to investigate. . . , or if the agency fails to respond within [the requisite time], the employee may then bring a civil action against the employer. [Citation.]' " (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 380 (*Iskanian*).) If the agency elects not to investigate, or investigates without issuing a citation, the aggrieved employee may then bring a PAGA action. (§ 2699.3, subd. (a)(2).)

A PAGA claim "is a dispute between an employer and the state, which alleges directly or through its agents—either the Agency or aggrieved employees—that the employer has violated the Labor Code." (*Iskanian*, *supra*, 59 Cal.4th at pp. 386–387.) Our Supreme Court has made clear that "an action to recover civil penalties [under PAGA] 'is fundamentally a law enforcement action designed to protect the public and not to benefit private parties' "; that "[i]n a lawsuit brought under [PAGA], the

8

employee plaintiff represents the same legal right and interest as state labor law enforcement agencies"; and that "an aggrieved employee's action under [PAGA] functions as a substitute for an action brought by the government itself." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 986 (*Arias*); *Iskanian*, at p. 387.) The state is always the real party in interest in a PAGA representative suit. (*Arias*, at p. 986.) "[E]*very* PAGA action, whether seeking penalties for Labor Code violations as to only one aggrieved employee—the plaintiff bringing the action—or as to other employees as well, is a representative action on behalf of the state." (*Iskanian*, at p. 394.)

### B. The Exclusive Concurrent Jurisdiction Rule

Long before the Legislature enacted PAGA, California recognized the judge-made doctrine of exclusive concurrent jurisdiction. (See, e.g., *Gorman v. Superior Court* (1937) 23 Cal.App.2d 173.) Under this doctrine, when two or more courts have subject matter jurisdiction over a dispute, the court that first asserts jurisdiction assumes it to the exclusion of the others. (*Franklin & Franklin v. 7-Eleven Owners for Fair Franchising* (2000) 85 Cal.App.4th 1168, 1175 (*Franklin*).) The rule is based upon the public policies of avoiding conflicts that might arise between courts if they were free to make contradictory decisions or awards relating to the same controversy and preventing vexatious litigation and multiplicity of suits. (*BBBB Bonding Corp. v. Caldwell* (2021) 73 Cal.App.5th 349, 374 (*BBBB Bonding Corp.*).) The rule is "a judicial rule of priority or preference and is not jurisdictional in the traditional

9

sense of the word," in that it "does not divest a court, which otherwise has jurisdiction of an action, of jurisdiction." (*People ex rel. Garamendi v. American Autoplan, Inc.* (1993) 20 Cal.App.4th 760, 764–765, 769 (*Garamendi*).) Because it is a policy rule, application of the rule depends upon the balancing of countervailing policies. (*Childs v. Eltinge* (1973) 29 Cal.App.3d 843, 854–855; *Garamendi*, at pp. 770 & 775 (conc. opn. of Armstrong, J.) [concurring in judgment because trial court properly balanced countervailing policies and found exclusive concurrent jurisdiction rule inapplicable]; *BBBB Bonding Corp.*, at p. 374 ["Because [the rule of exclusive concurrent jurisdiction] is a policy rule, the application of the rule in a given case depends upon the balancing of countervailing policies"].)

" 'Although the rule of exclusive concurrent jurisdiction is similar in effect to the statutory plea in abatement [Code Civ. Proc., § 430.10, subd. (c)], it has been interpreted and applied more expansively, and therefore may apply where the narrow grounds required for a statutory plea [in] abatement do not exist. [Citation.] Unlike the statutory plea [in] abatement, the rule of exclusive concurrent jurisdiction does not require absolute identity of parties, causes of action or remedies sought in the initial and subsequent actions. [Citations.] If the court exercising original jurisdiction has the power to bring before it all the necessary parties, the fact that the parties in the second action are not identical does not preclude application of the rule. Moreover, the remedies sought in the separate actions need not be precisely the same so long as the court exercising original

10

jurisdiction has the power to litigate all the issues and grant all the relief to which any of the parties might be entitled under the pleadings.' "[5]  (*Garamendi, supra*, 20 Cal.App.4th at p. 770.)

It has been said that " '[a]n order of abatement issues as a matter of right' " where the conditions for its issuance exist, whether the right to abate exists under statutory abatement or the judicial rule of exclusive concurrent jurisdiction. (*Garamendi, supra*, 20 Cal.App.4th at pp. 770–771.)  Where the exclusive concurrent jurisdiction rule applies, the second action should be stayed.  (*Id.* at p. 771.)  We recognize that certain authorities state that the exclusive concurrent jurisdiction rule is mandatory (*Lawyers Title Ins. Corp. v. Superior Court* (1984) 151 Cal.App.3d 455, 460), whereas others state that, as a policy rule, countervailing policy concerns may render the rule inapplicable.  (*Childs v. Eltinge, supra*, 29 Cal.App.3d at pp. 854– 855; *Garamendi, supra*, 20 Cal.App.4th at pp. 770, 775; *BBBB*

[5] Courts have held that the rule of exclusive concurrent jurisdiction is subject to waiver and should be raised by demurrer where the issue appears on the face of the complaint and by answer where factual issues must be resolved, followed by a motion to abate or for summary judgment.  (*Garamendi, supra*, 20 Cal.App.4th at p. 771; see *BBBB Bonding Corp., supra*, 73 Cal.App.5th at p. 374.)  BevMo did not raise the issue by demurrer or answer.  We decline to find waiver, however, because petitioners have never argued for waiver.  Further, as *Garamendi* observed, "In some reported decisions, it is not clear whether motions to abate or stay without answer or demurrer may have been brought." (*Garamendi*, at p. 771, fn. 9, citing *Figgs v. Superior Court* (1962) 204 Cal.App.2d 231, *Gorman v. Superior Court, supra*, 23 Cal.App.2d 173; see also *Childs v. Eltinge, supra*, 29 Cal.App.3d at p. 848 [rule raised by motion to quash or dismiss].)

11

*Bonding Corp.*, *supra*, 73 Cal.App.5th at p. 374.) There is some tension between the two lines of authority, but we need not delve further into the issue because, if we assume the rule is mandatory, for reasons we set forth, *post*, PAGA does not clearly abrogate the rule; if we alternatively assume the trial court had discretion to weigh policy concerns in deciding whether to apply the rule, the court here committed no abuse of discretion in doing so.

### C. The Court Did Not Err in Applying the Exclusive Concurrent Jurisdiction Rule

In their writ petition, petitioners do not argue that the conditions for applying the exclusive concurrent jurisdiction rule are absent here. They do not contend, for example, that this case and *Paez* do not arise from the same facts and theories, that the two litigations pose no risk of inconsistent rulings, or that the parties and remedies involved are such that the exclusive concurrent jurisdiction rule cannot be applied. Instead, as we read their petition, petitioners make two overarching arguments for why the trial court erred, and these arguments frame the scope of the issues we address herein. First, petitioners argue that PAGA does not include a statutory first-to-file rule, so the trial court could not apply the exclusive concurrent jurisdiction doctrine to their PAGA representative suit. Second, they argue that countervailing policy concerns render the exclusive concurrent jurisdiction rule inapplicable to PAGA representative

12

suits.[6] As set forth below, we find petitioners' arguments unpersuasive.

Petitioners' first argument is, in essence, an argument that PAGA abrogated the judge-made doctrine of exclusive concurrent jurisdiction. We disagree, as we conclude that the absence of an express first-to-file rule in PAGA does not mean that the common law doctrine cannot be applied in PAGA representative suits.

As a general rule, statutes should not be interpreted to alter the common law (*Presbyterian Camp & Conference Centers, Inc. v. Superior Court* (2021) 12 Cal.5th 493, 503 (*Presbyterian Camp*)), and the "established rule" of exclusive concurrent jurisdiction has been part of our jurisprudence since at least the 1930s. (*Franklin, supra*, 85 Cal.App.4th at p. 1175 [describing the "established rule"]; see also *De Brincat v. Mogan* (1934) 1 Cal.App.2d 7, 9–11 [applying early version of rule as a question of "first impression"]; *Gorman v. Superior Court, supra,* 23 Cal.App.2d at p. 178 [applying rule]; *Childs v. Eltinge, supra,*

_____

[6] Petitioners make seemingly contradictory statements regarding whether they believe application of the exclusive concurrent jurisdiction rule is mandatory or whether a court may find that countervailing policies outweigh the policies that support the rule in certain instances. They argued below that the rule should not be applied "[a]s a matter of policy." Here, petitioners may intend to argue only that the trial court's ruling was erroneous because PAGA prohibits the application of the exclusive concurrent jurisdiction rule, so we address that issue first. As the trial court did, however, we perceive petitioners to argue also that the trial court had discretion to find that countervailing policies outweigh policies supporting application of the rule, so we address that point as well.

29 Cal.App.3d at p. 854 [declining to apply rule because of countervailing policies].)  Statutes " 'should be construed to avoid conflict with common law rules.  [Citation.]  "A statute will be construed in light of common law decisions, unless its language ' "clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning the particular subject matter . . . ." ' " ' " (*California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 297 (*Health Facilities*); see also *Presbyterian Camp*, at p. 503.)  Similarly, courts will not find that the Legislature has controlled the exercise of a court's equitable discretion absent a clear and unmistakable indication that the Legislature has chosen to do so. (*Webster v. Superior Court* (1988) 46 Cal.3d 338, 345.)  " '[T]here is a presumption that a statute does not, by implication, repeal the common law.  [Citation.]  Repeal by implication is recognized only where there is no rational basis for harmonizing two potentially conflicting laws.' " (*Health Facilities*, at p. 297.)  The presumption against displacement of the common law is strong, although abrogation of the common law does not require an express declaration.  (*Ibid*.)  A common law rule will be deemed abrogated only if "the language or evident purpose of the statute manifest a legislative intent to repeal" it.  (*Ibid*.)

We turn first to whether the language of PAGA evidences the requisite legislative intent.  As support for their position, petitioners rely on section 2699, subdivision (h); they point out that a PAGA action is a "type of qui tam action" (*Iskanian, supra*, 59 Cal.4th at p. 382), and the False Claims Act, another qui tam

14

statute, contains a statutory first-to-file rule (Gov. Code, § 12652, subd. (c)(10)[7]) whereas PAGA does not; and they rely on the canon of statutory interpretation that " ' "[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed." ' " (*Rashidi v. Moser* (2014) 60 Cal.4th 718, 726.)

We do not find the statutory language or the canon of statutory interpretation relied on by petitioners to be dispositive. (See *People v. Valencia* (2017) 3 Cal.5th 347, 381 (conc. opn. of Kruger, J.) [all interpretive canons are guides to statutory interpretation and are not "invariably controlling"].) Section 2699, subdivision (h) provides that, if the LWDA cites or brings an action against an employer on the same facts and theories for a violation of the same section or sections of the Labor Code that are noticed by an aggrieved employee, "[n]o action" may be brought by an aggrieved employee.[8] This provision reflects the

---

[7] The relevant provision of the False Claims Act provides: "When a person brings an action under this subdivision, no other person may bring a related action based on the facts underlying the pending action." (Gov. Code, § 12652, subd. (c)(10).)

[8] Subdivision (h) states in full: "No action may be brought under this section by an aggrieved employee if the agency or any of its departments, divisions, commissions, boards, agencies, or employees, on the same facts and theories, cites a person within the timeframes set forth in Section 2699.3 for a violation of the same section or sections of the Labor Code under which the aggrieved employee is attempting to recover a civil penalty on behalf of himself or herself or others or initiates a proceeding pursuant to Section 98.3." (§ 2699, subd. (h).)

Legislature's stated desire for the LWDA to retain primacy over Labor Code enforcement. (Stats. 2003, ch. 906, § 1, subd. (d).) If the LWDA does not undertake enforcement efforts after the employee gives the employer and the LWDA the requisite notice, "an aggrieved employee" may sue his or her employer "on behalf of himself or herself and other current or former employees." (§ 2699, subd. (a); 2699.3, subds. (a)–(c).) We agree with petitioners that this statutory language is silent on the subject of whether an aggrieved employee may bring a PAGA action when another aggrieved employee brings a PAGA suit against the employer based on the same facts and violations. But, as noted above, in order to depart from or abrogate common law rules, statutory language must " ' " " ' " '*clearly and unequivocally* disclose[] an intention to' " ' " ' " do so. (*Presbyterian Camp*, *supra*, 12 Cal.5th at p. 508.) We do not believe the absence of an express statutory prohibition on the filing of duplicative PAGA representative actions manifests the requisite unequivocal intent to repeal the well-established exclusive concurrent jurisdiction rule, especially considering the rule's important policies of avoiding conflicting decisions and preventing vexatious litigation and multiplicity of suits. (See *BBBB Bonding Corp.*, *supra*, 73 Cal.App.5th at p. 374 [discussing policies]; cf. *Wesson v. Staples the Office Superstore, LLC*, *supra*, 68 Cal.App.5th at p. 768 [section 2699.3 imposes only procedural preconditions to filing a PAGA suit, "intended to afford the LWDA an 'opportunity to decide whether to allocate scarce resources to an investigation . . . .' "; it includes no instruction relevant to the

16

management of ongoing PAGA litigation and reveals no legislative intent that would preclude a court's exercise of inherent authority to ensure manageability].)

PAGA's evident purpose similarly does not manifest a clear intent to abrogate the exclusive concurrent jurisdiction rule. As petitioners point out, faced with insufficient funding and staffing for the LWDA and a growing labor market, the Legislature enacted PAGA "to augment the limited enforcement capability of the [LWDA] by empowering employees to enforce the Labor Code as representatives of the [LWDA]," and it enacted new civil penalties to deter violations. (*Iskanian, supra*, 59 Cal.4th at pp. 379, 383; Stats. 2003, ch. 906, § 1.) Recognizing a court's power to stay a subsequent PAGA representative suit that is wholly subsumed by a prior PAGA representative suit—i.e., where the second suit alleges the same Labor Code violations based on the same facts and theories as the prior suit—does not eliminate the code enforcement mechanism provided by PAGA: the first suit proceeds, thus fulfilling PAGA's purpose. Further, should the plaintiff in the first litigation voluntarily dismiss his or her claims for some reason, the stay may be lifted on the later-filed suit. While the Legislature sought to maximize code enforcement and deter future violations, we do not discern an intent in PAGA to waste judicial resources, encourage a multiplicity of duplicative suits, and prohibit courts from staying suits that might otherwise lead to inconsistent results. PAGA and the exclusive concurrent jurisdiction rule can rationally coexist, and so they must. (*Presbyterian Camp*, at p. 503 [" 'Only

17

" 'where there is no rational basis for harmonizing' " a statute with the common law will we conclude that settled common law principles must yield.' "].)

Petitioners cite *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73 (*Kim*), and *Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745 (*Huff*), to support their argument that the trial court impermissibly grafted onto PAGA a first-to-file requirement not included by the Legislature. These cases do not assist petitioners. In *Kim*, the Supreme Court rejected the employer's argument that an aggrieved employee loses standing to pursue a PAGA representative claim by settling his or her individual claims. (*Kim*, at pp. 80, 84.) The court noted that PAGA conveyed standing upon an "aggrieved employee," defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." (§ 2699, subd. (c).) As part of the support for its holding, the court reasoned that the defendant's interpretation would "expand section 2699[, subd. ](c) to provide that an employee who accepts a settlement for individual damage claims is no longer aggrieved," and "the Legislature said no such thing." (*Kim*, at p. 85.) *Huff* rejected an employer's argument that a PAGA representative could pursue penalties only for the same type of Labor Code violations that he or she suffered because the statute unambiguously provided that "an aggrieved employee" can sue for violations that are not committed against him or her. (*Huff,* at pp. 753–754.) In both cases, the courts declined to deviate from clear statutory language governing the

18

issue before them. Here, we do not add a requirement to clear statutory language. Rather, we construe PAGA in light of the common law. (*Health Facilities*, *supra*, 16 Cal.4th at p. 297.)

Nor are *Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, and *Tan v. GrubHub, Inc.* (N.D. Cal. 2016) 171 F.Supp.3d 998 (*Tan*), also relied on by petitioners, dispositive of the question before us. *Julian* held that an arbitration agreement executed before an employee meets the statutory requirements to file a PAGA suit is an individual, predispute agreement that, under *Iskanian*, does not require arbitration of a PAGA claim. (*Julian*, at pp. 867, 872.) *Julian* rejected the defendant employer's argument that the arbitration agreements at issue were enforceable, postdispute agreements because the plaintiffs signed them after they were notified that another employee, Rojas, had filed a similar lawsuit. (*Id.* at pp. 872–873.) *Julian* observed, "nothing in the PAGA statutory scheme forecloses separate but similar actions by different employees against the same employer." (*Julian*, at p. 866, citing *Tan*, at pp. 1012–1013.) *Julian* rejected the employer's argument that the *Rojas* action and the plaintiffs' action represented "the same dispute, for purposes of determining whether the arbitration agreement constituted an enforceable postdispute agreement" (*Julian,* at p. 873), stating that a contrary finding would impair PAGA's enforcement mechanism, which permits the state to act through more than one employee. (*Ibid.*) But the impairment mentioned in *Julian* was allowing employers to require arbitration of PAGA claims in all instances where an arbitration agreement was

19

signed after a different employee filed a similar PAGA claim. One need only look to the facts recited in *Julian* to see how this could impair enforcement litigation, as, by the time the plaintiffs filed suit in *Julian*, the *Rojas* plaintiff had dropped her PAGA claim. (*Julian*, at pp. 860–862.) *Julian* did not address whether PAGA's purposes would be impaired through application of the exclusive concurrent jurisdiction rule where concurrent PAGA lawsuits have been filed and the later-filed suit alleges, in the words of the plaintiffs who filed it, "virtually the same facts and Labor Code violations on behalf of thousands of overlapping aggrieved employees."

In *Tan,* the defendant filed a motion to dismiss a PAGA claim under Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)) for failure to state a claim, arguing that an earlier-filed PAGA action in state court alleged the same claims for the same employees. (*Tan*, *supra*, 171 F.Supp.3d at pp. 1011–1012.) The court denied the motion because "[PAGA] is silent with respect to whether an employee may bring a PAGA action when another private plaintiff brings suit against the employer in a representative capacity." (*Id.* at p. 1012.) The Rule 12(b)(6) motion in *Tan* posed the question of whether the plaintiff failed to state a claim for want of statutory authorization to file. (Cf. *In re Plavix Marketing, Sales Practices and Products Liability Litigation (No. II)* (3d Cir. 2020) 974 F.3d 228, 232–233 [the first-to-file bar in the federal False Claims Act is a matter of statutory authorization, asking " ' "whether [the relator] falls within the class of plaintiffs whom Congress has authorized to sue," ' which

20

is another way to ask whether the statute gives it a cause of action."].)[9]  That question is distinct from the one asked here— whether PAGA abrogated the policy-driven common law rule of exclusive concurrent jurisdiction.  We have determined it did not, and neither *Julian* nor *Tan* compels a different conclusion.

Next, petitioners fail to show that the trial court " ' "exceeded the bounds of reason . . . ." ' " when it determined that the countervailing policies raised by petitioners did not outweigh the policies supporting application of the exclusive concurrent jurisdiction rule in this case.  (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69; *State Farm etc. Ins. Co. v. Superior Court* (1956) 47 Cal.2d 428, 432 ["Mandate lies to control judicial discretion when that discretion has been abused"]; see also *Robbins v. Superior Court* (1985) 38 Cal.3d 199, 205 ["Although mandamus does not generally lie to control the exercise of judicial discretion, the writ will issue 'where, under the facts, that discretion can be exercised in only one way' "].)[10]  The trial court recognized, as have we, that application

[9] Whether a violation of the first-to-file rule under the Federal False Claims Act is jurisdictional or bears only on the merits of the relator's action is a question that has divided the federal circuits.  (Compare *United States ex rel. Hayes v. Allstate Ins. Co.* (2d Cir. 2017) 853 F.3d 80, 85–86 & *In re Plavix Marketing, Sales Practices and Products Liability Litigation*, *supra*, 974 F.3d at pp. 232–233 [not jurisdictional] with *United States ex rel. Carson v. Manor Care, Inc.* (4th Cir. 2017) 851 F.3d 293, 303 [jurisdictional].)

[10] For purposes of this discussion, we will assume that application of the rule may depend upon the balancing of policies. (*Childs v. Eltinge*, *supra*, 29 Cal.App.3d at p. 854; *Garamendi*,

of the exclusive concurrent jurisdiction rule here did not vitiate the purposes for which PAGA was enacted. It additionally recognized that resolution of this case would duplicate court efforts, waste resources, and potentially produce divergent results. The trial court could reasonably conclude that the policies giving rise to the exclusive concurrent jurisdiction rule were not outweighed by those that drove PAGA's enactment. Indeed, petitioners themselves told the trial court below that "[a]llowing piecemeal complex litigation against BevMo over the same California Labor Code claims underlying plaintiffs' PAGA actions would waste both judicial and party resources, as well as risk different outcomes based on the same facts."

Petitioners advance two remaining arguments in support of their petition—that application of the rule will promote reverse auctions and that PAGA does not limit prosecution to the plaintiff with the most sweeping causes of action. Their first contention is inaccurate. The exclusive concurrent jurisdiction rule applies to stay a subsequent suit. Defendants do not pick and choose between plaintiffs when the rule applies. Moreover, the possibility of a reverse auction is inherent in PAGA whenever the LWDA authorizes multiple plaintiffs to sue; applying the exclusive concurrent jurisdiction doctrine does not increase the likelihood of a reverse auction. We emphasize that in any case involving a proposed PAGA settlement, the trial court must review the settlement for fairness and "scrutinize whether, in

---

*supra*, 20 Cal.App.4th at pp. 770, 775; *BBBB Bonding Corp.*, *supra*, 73 Cal.App.5th at p. 374.)

resolving the action, a PAGA plaintiff has adequately represented the state's interests, and hence the public interest." (*Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 89.)  And although there is no statute expressly governing objections by plaintiffs pursuing other PAGA representative actions (*id.* at p. 79), petitioners may seek to object to any proposed *Paez* settlement. We have no reason to believe these mechanisms—along with a statutory motion to vacate or set aside an approved settlement (*id.* at p. 71)—will be insufficient to mitigate petitioners' concerns.

In their final argument, petitioners seem to contend that BevMo argued below that a stay of their suit was appropriate because it was more narrowly tailored than *Paez*, and that allowing a stay in this case would create a rule that the lawsuit with the greatest number of claims proceeds, thus encouraging frivolous pleading.  But Petitioners do not present a convincing argument that staying duplicative PAGA suits would lead to frivolous filings or that such concerns outweigh the policies supporting application of the rule.[11]

## DISPOSITION

The petition for writ of mandate is denied.  Real Party in Interest shall recover costs in this proceeding.  (Cal. Rules of Court, rule 8.493(a).)

BROWN, J.

_____

[11] Given our disposition, we need not address BevMo's argument that the trial court could have maintained the stay under its inherent authority.

WE CONCUR:

POLLAK, P. J.
STREETER, J.

*Shaw et al. v. Superior Court* (A163263)

Trial Court:        Contra Costa County Superior Court

Trial Judge:        Hon. Edward G. Weil

Counsel:        Bryan Schwartz Law, Bryan J. Schwartz; Altshuler Berzon LLP, Michael Rubin for Petitioners.

No appearance for Respondent.

Arnold & Porter Kaye Scholer LLP, Steven L. Mayer, Dipanwita Deb Amar, Katelyn E. Rey for Real Party in Interest.