Filed 11/26/24  Right Healthcare v. Ashli Healthcare CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RIGHT HEALTHCARE, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> ASHLI HEALTHCARE, INC. et al., <br><br> Defendants and Respondents. | F085394 <br><br> (Super. Ct. No. S-1500-CV-272617) <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Bernard C. Barmann, Jr., Judge.

McCormick, Barstow, Sheppard, Wayte & Carruth, Todd W. Baxter and Jerry D. Casheros for Plaintiff and Appellant.

Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, Catherine E. Bennett and Dustin S. Dodgin for Defendants and Respondents.

-ooOoo-

Appellant Right Healthcare, Inc. (Right Healthcare) appeals from a November 8, 2022 order of the Kern County Superior Court denying its motion to vacate renewal of an October 11, 2012 default judgment entered in favor of respondents Ashli Healthcare, Inc. (Ashli Healthcare) and Heriberto Diaz (collectively, respondents).[1] We affirm the order on the basis of judicial estoppel.

**FACTUAL AND PROCEDURAL HISTORY**

Diaz was once married to Kimberli Ebling. Ebling is the sole shareholder and chief executive officer of Right Healthcare, a durable medical equipment supplier. Until late 2009, Diaz was employed by Right Healthcare as a sales manager. Sometime in 2009, Diaz formed Ashli Healthcare, which also supplies durable medical equipment.

I.    **Case No. S-1501-FL-594337**

On June 14, 2005, Ebling filed a petition for dissolution of marriage in the Kern County Superior Court. On February 27, 2008, the family court entered a partial judgment of dissolution terminating marital status and reserving jurisdiction "over all other issues" such as property division. The parties stipulated, among other things:

"BUSINESS KNOWN AS RIGHT HEALTH CARE:

"(8) All stock owned by the parties in the business known as Right Health Care is community property including the stock held solely in the name of either party.

"(9) The running of said business shall remain status quo with the parties' cooperating regarding the operation of said business pending the determination of the value and sale and/or buy-out of said business. It is understood by the parties that [Ebling] wishes to sell said business and [Diaz] is considering a buy-out of [Ebling]'s interest therein."

On February 15, 2011, Diaz filed a motion for "APPOINTMENT OF BUSINESS VALUATOR." Following a March 9, 2011 hearing, the court ordered:

---

[1] In this opinion, we refer to Heriberto Diaz as either Diaz or Mr. Diaz. To avoid confusion, we identify another individual who shares this surname by his full name.

"Right Health Care . . . shall be valued by Jerry Randall, at a cost not to exceed $10,000, pursuant to Evidence Code section 730.  No work shall be performed in excess of $10,000 without approval of counsel or a court order.  The business shall be valued as of December 31, 2008 and December 31, 2009. . . ."  (Some capitalization omitted.)

In August 2011, Diaz moved for an order appointing a receiver for Right Healthcare, joinder of Right Healthcare as a party, and attorney's fees.  In an attachment to a "RESPONSIVE DECLARATION TO ORDER TO SHOW CAUSE OR NOTICE OF MOTION" filed August 30, 2011, Ebling asserted, "The motion for a receiver and the motion for joinder are legal harassment."  She also alleged Diaz formed Ashli Healthcare as a direct competitor to Right Healthcare and "has actively and maliciously tried and continues to try to take existing customers and take away Right Healthcare business."

Following a February 7, 2012 hearing, the court ordered Ebling to "produce specific records to Mr. Randall," i.e., "detailed payroll reports and form W-25 for all employed by Right Healthcare"; "all business bank statements"; "all credit card statements of accounts used for business purposes"; and "production of the efforts being made to satisfy the notice of state tax lien . . . in the amount of $107,709.41" as of December 20, 2011.  (Some capitalization omitted.)

On February 28, 2012, a receiver was appointed.  On March 28, 2012, Diaz's joinder motion was granted.  Following a June 1, 2012 hearing, the court ruled:

"Family Code section 272 permits the court to award attorney fees in this matter.  The conduct of [Ebling] has clearly hindered the court in resolving this matter and caused significant and unnecessary legal fees to be incurred by [Diaz].  The court has been forced to continue this hearing on a number of occasions because [Ebling] has failed to provide court ordered discovery without justification for her failure. . . .  The court orders [Ebling] to pay legal fees to [Diaz] in the amount of $12,816.00 in connection with [this] matter. . . ."  (Some capitalization omitted.)

On June 4, 2012, Diaz filed a joinder complaint.  On June 26, 2012, Right Healthcare was served therewith.

On November 1, 2012, "at the request of all counsel" (capitalization omitted), the cause was taken off calendar. According to the docket, there were no subsequent filings or proceedings in the dissolution action until February 15, 2022, when Ebling requested substitution of counsel.

## II.     Case No. S-1500-CV-272617

On or around January 11, 2011, Right Healthcare initiated a civil lawsuit in the Kern County Superior Court against Ashli Healthcare, Diaz, Ernesto Diaz, and Mercy Pena for conversion, misappropriation of trade secrets, unfair competition, intentional interference with prospective economic advantage, and violations of the Computer Fraud and Abuse Act and the Health Insurance Portability and Accountability Act of 1996 (HIPAA). The operative complaint specified (1) Ashli Healthcare was created in or around May 2009 "for the sole purpose of competing with and causing damage to . . . Right Healthcare" (some capitalization omitted); and (2) Diaz, Ernesto Diaz, and Pena— all of whom formerly worked for Right Healthcare and later joined Ashli Healthcare— "intentionally caused [Right Healthcare] to suffer loss of income and customers" by taking "proprietary material and data used by [Right Healthcare] in its daily business operations" and "the customer list" containing sensitive information "to set up, operate and maintain a corporation"; "using the customer lists" "to lure away [Right Healthcare]'s elderly, disabled and susceptible customers"; falsely representing to Right Healthcare's customers that "each of them are employed by or affiliated with [Right Healthcare]" "to obtain the customer's business for the use and profit of [Ashli Healthcare, Diaz, Ernesto Diaz, and Pena]"; "soliciting [Right Healthcare]'s existing customers with the intent to make them customers of [Ashli Healthcare]"; attempting to "interfere with [Right Healthcare's] online banking"; and "interfering with other contracts that [Right Healthcare] has with providers and health care entities." On March 7, 2011, Right Healthcare filed an ex parte application for a temporary restraining order, which Ashli Healthcare, Diaz, Ernesto Diaz, and Pena opposed.

4.

On September 9, 2011, Ashli Healthcare, Diaz, Ernesto Diaz, and Pena filed their answer to the operative complaint. That same day, (1) Ashli Healthcare filed a cross complaint against Right Healthcare and "MOES 1 through 50, inclusive"; and (2) Diaz filed a cross-complaint against Right Healthcare and "ROES 1 through 50, inclusive." Ashli Healthcare and Diaz both raised causes of action for defamation and unfair and unlawful business practices. Ashli Healthcare raised separate causes of action for intentional interference with prospective economic advantage and conversion. Diaz raised separate causes of action for breach of contract and violations of the Labor Code pertaining to wage payments. On October 7, 2011, Right Healthcare filed its answer to the cross-complaints.

On May 7, 2012, Ashli Healthcare, Diaz, Ernesto Diaz, and Pena filed—among other things—a motion to stay proceedings "pending resolution of a similar action," i.e., the dissolution action (Case No. S-1501-FL-594337). They contended:

> "[T]he following is an overview of Right Healthcare's claims in the Civil Action:
>
> "● Conversion, relating to alleged misappropriation of customer lists, receivables reports, and other proprietary materials and data;
>
> "● Violation of the Computer Fraud and Abuse Act, to the extent [Ashli Healthcare, Diaz, Ernesto Diaz, and Pena] allegedly misappropriated the above information from Right Healthcare's computer systems;
>
> "● Misappropriation of Trade Secrets, relating to the same items;
>
> "● Unfair Competition, based on [Ashli Healthcare, Diaz, Ernesto Diaz, and Pena]'s alleged misappropriation of the above items for purposes of incorporating Ashli Healthcare and competing with Right Healthcare;
>
> "● Intentional Interference with Prospective Economic Advantage, based on unidentified defamatory statements

allegedly made by [Ashli Healthcare, Diaz, Ernesto Diaz, and Pena];

"●   Defamation, based on one alleged statement by an employee of Ashli Healthcare to the effect that Right Healthcare was going out of business and not serving its existing customers; and

"●   Violation of the privacy rights of various unidentified patients receiving equipment from Right Healthcare.

"In connection with these claims in the Civil Action, Right Healthcare prays for compensatory damages 'in an amount according to proof.' [Citation.]  Because Right Healthcare is a corporate entity, this is tantamount to an allegation that Right Healthcare has suffered a diminution in value as a result of [Ashli Healthcare, Diaz, Ernesto Diaz, and Pena's] alleged acts.

"Likewise, in the Dissolution Action, Ebling has placed the same conduct at issue.  Specifically, she contends in the Dissolution Action that '[h]is actions have damaged Ms. Ebling and Right Healthcare' in that Diaz formed Ashli Healthcare 'to compete with Right Healthcare.' [Citation.]

". . . [T]he Family Law Court may provide a full and complete remedy to address[] Diaz's alleged conduct:  Where a community asset has been 'deliberately misappropriated' or mismanaged by one spouse, the Court may penalize the wrongdoer spouse through an unequal allocation of assets or debts.  [Citations.]  Unequal allocation is particularly appropriate where one spouse's misconduct amounts to 'calculated thievery' or breaches the spousal fiduciary duty imposed by statute.  [Citations.]

"The Dissolution Action already provides an avenue for Ebling to seek the damages claimed by Right Healthcare in the Civil Action.  If both the Civil Action and the Dissolution Action are permitted to proceed simultaneously, there is a substantial probability that the two courts could issue inconsistent rulings—one by way of an unequal property distribution and another by way of a damages award.

"Accordingly, the Civil Action should be stayed pending resolution of the Dissolution Action, wherein many of the issues presented by Right Healthcare in the Civil Action will be conclusively resolved."

An attached declaration of defendants' attorney Thomas DeNatale in support of the stay motion read in part:

6.

"7.     The sole remaining issue in the Dissolution Action is the valuation of Right Healthcare and its division between Ebling and Diaz. [¶] . . . [¶]

"10.     . . . [O]n March 28, 2012, the Court granted Diaz's motion to join Right Healthcare as a party in the Dissolution Action.  [¶] . . . [¶]

"11.     Once the valuation is complete, the Court will make an ultimate determination as to the division of Right Healthcare.

"12.     Ebling has previously alleged in the Dissolution Action that Diaz[] breached his spousal fiduciary duty in forming and operating Ashli Healthcare, with that breach having damaged the value of Right Healthcare.

"13.     As Right Healthcare is now a party to the Dissolution Action, both Right Healthcare and Ebling can raise any alleged breaches of spousal fiduciary duty by Diaz as grounds for an unequal property division.  The purpose of such unequal distribution would be to reimburse Ebling, Diaz, and/or Right Healthcare for any damage thereby caused to the value of Right Healthcare.  [¶] . . . [¶]

"14.     In the Civil Action, Right Healthcare seeks damages for various alleged acts of Diaz and two of his employees.  [¶] . . . [¶]

"17.     [Ashli Healthcare, Diaz, Ernesto Diaz, and Pena] deny Right Healthcare's allegations; however, resolving this action or awarding any damages to Right Healthcare necessarily requires this Court to make a determination as to the diminution of Right Healthcare's value as a result of [Ashli Healthcare, Diaz, Ernesto Diaz, and Pena's] alleged misconduct.

"18.     These values are presently being determined in the Dissolution Action."

On May 16, 2012, Right Healthcare filed its opposition to the stay motion.  It acknowledged "the valuation of Right Healthcare in the dissolution proceeding has a direct impact on damages in [the civil] matter" but argued a stay "is completely unnecessary."  Right Healthcare stated:

"The present action was brought on January 12, 2011 and relates to events transpiring in May 2009 and continuing into 2011.  The only [way] a full and complete remedy of the civil case would be achieved is if both parties agreed to enter in an all-inclusive settlement.  Otherwise the period of the valuation of Right Healthcare set by the Family Law Court as 2007

7.

to 2009 does not account for the damage caused to Right [Healthcare] by [Ashli Healthcare, Diaz, Ernesto Diaz, and Pena] as plead[ed] in the civil action, which also necessitated the filing of Temporary Restraining Order due to allegations of ongoing offenses in March 2011.

"The legal issues in this matter go far beyond the valuation of the company's financial viability in the years of 2007, 2008, and 2009. Complex civil issues of conversion, trade secrets, HIPAA rights and unfair competition issues are involved in the present matter, and the family court's ability to properly dispose of with respect to a determination pursuant to Family Code section 2602 regarding the deliberate misappropriation by a single spouse. [Ebling] has sought recovery from [Ashli Healthcare, Diaz, Ernesto Diaz, and Pena] and has not limited recovery to the wrongful acts of Mr. Diaz. [Ebling] is pursuing recovery from Ashli [Healthcare] as a corporation, and from Mercy Pena and Ernesto Diaz in their capacity as individuals. Simply put the wrongful acts at issue in this case are not confined to Mr. Diaz, and cannot be resolved by a compensation for acts by Mr. Diaz prior to time frame at issue in this case. [Ebling] has documented incidents supported allegations of wrongful acts by the defendant Ashli[ Healthcare]'s employees as recently as July 2011, which is far beyond the December 31, 2009 cutoff date of the business valuation dates.

"Furthermore there are cross complainants in this matter by Mr. Diaz and by Ashli [Healthcare] that cannot be resolved by the Family law court. The diversity of parties and issues in this case do not justify a stay of the proceeding until resolution of the family case, and only serve to prejudice Right Healthcare in pursuing these clams . . . ."

Following a May 30, 2012 hearing, the superior court denied respondents' stay motion and scheduled a case management conference for July 16, 2012.

At the July 16, 2012 case management conference, neither Right Healthcare nor a representative therefor appeared. The court ordered Right Healthcare to show cause as to why the court should not strike the complaint as well as the answer to the cross-complaints for failure to be represented by counsel and failure to comply with the court's orders. At an August 23, 2012 case management conference, Right Healthcare did not appear. The court struck Right Healthcare's complaint and ordered dismissal. The court also struck Right Healthcare's answer to the cross-complaints and ordered entry of default. On October 4, 2012, (1) Ashli Healthcare filed a "Request For Dismissal" (some

8.

capitalization omitted) of its cross-complaint "as against MOES 1 through 50, inclusive, ONLY," without prejudice; and (2) Diaz filed a "Request For Dismissal" (some capitalization omitted) of his cross-complaint "as against ROES 1 through 50, inclusive, ONLY," without prejudice.   On October 9, 2012, counsel for Ashli Healthcare and Diaz advised the court "a default prove-up package was submitted this morning." (Capitalization omitted.)  On October 11, 2012, the court entered a default judgment in favor of Ashli Healthcare and Diaz.

On June 6, 2022, Ashli Healthcare and Diaz applied for renewal of the October 11, 2012 judgment.  A "**NOTICE OF RENEWAL OF JUDGMENT**" dated July 26, 2022, was mailed to both Ebling and Right Healthcare.  In August 2022, Right Healthcare moved to vacate the renewal "to directly allow the family court to characterize and divide a community estate."  It argued:

> "[O]nce a family law court acquires jurisdiction over a marital dissolution and the corresponding community estate, no other action, proceeding, or court may 'usurp' the authority of the family law court, or infringe 'upon the family law court's first-in-time prior jurisdiction in a marriage dissolution action.' [Citation.]
>
> "The priority of jurisdiction doctrine has been applied to invalidate superior court orders that may conflict or interfere with the family court's priority of jurisdiction to characterize and divide a community estate. [Citations.]  [¶]  The priority of jurisdiction doctrine has also been applied to restrain superior court orders in favor of a third party judgment creditor of one spouse, when the orders may interfere with the family court's jurisdiction and authority to characterize and divide the spouse's community estate with the non-debtor spouse.  [Citations.]  [¶] . . . [¶]
>
> "Here, Right Healthcare . . . and the parties' associated breaches of fiduciary obligations claims are a part of the community estate, alleged from the outset of Mr. Diaz's formation of Ashli Healthcare . . . on May 13, 2009, during the dissolution process.  On June 14, 2005, in case number S-1501-FL-594337, the Kern County Superior Court obtained jurisdiction over this marital dissolution and the corresponding community estate. Thus, no other action, proceeding, or court may 'usurp' the authority of the family law court, or infringe 'upon the family law court's first-in-time prior

9.

jurisdiction in a marriage dissolution action.' This specifically includes case number S-1500-CV-272617[].

"Mr. Diaz recognized this principle in the family matter seeking to, and successfully joining Right Healthcare Inc. to the marital dissolution in case number S-1501-FL-594337. Mr. Diaz and Ashli Healthcare . . . also recognized this in the civil proceeding, seeking to stay proceedings until resolution of the dissolution matter . . . . However, Mr. Diaz and Ashli Healthcare . . . [,] in violation of these foundational concepts, proceeded forward in the civil case on claims for default judgments, seeking to enforce claims already within the jurisdiction of the family court. The aforementioned authority provides that this is an interference with the family court's priority of jurisdiction to determine and divide the husband and wife's community estate. Namely, the parties['s] cross-claims for breaches of fiduciary obligations pertaining to Right Healthcare . . . , which still remain pending. To take Mr. Diaz and Ashli Healthcare['s] . . . conduct to its logical conclusion will require the family court to reassess the basis of the judgments in deciding claims for breaches of fiduciary obligations.

"In furtherance of the understanding that the civil court cannot untie these claims from the family court's jurisdiction as they are so intrinsically intertwined, it is key to look to Mr. Diaz and Ashli Healthcare['s] . . . actual requests to renew the judgments. Therein Mr. Diaz and Ashli Healthcare . . . list and serve Ms. Ebling as a judgment debtor. However, Ms. Ebling is not a party to the civil case—only to the family law case. Yet, Mr. Diaz and Ashli Healthcare . . . seek to equate her involvement without a second thought.

"In short, Mr. Diaz and Ashli Healthcare['s] . . . ultimate default judgments were obtained in excess of the Court's jurisdiction and in direct conflict with the family court's priority of jurisdiction. Accordingly, the renewed judgment should be vacated."

On September 6, 2022, Ashli Healthcare and Diaz filed their opposition.

A hearing was held October 11, 2022. On November 8, 2022, the superior court issued an order denying Right Healthcare's motion to vacate the renewal of the October 11, 2012 judgment.

## DISCUSSION

" 'Code of Civil Procedure section 683.020, which defines the period for enforceability of judgments, provides after the expiration of 10 years after the date of

10.

entry of a money judgment . . . the judgment may not be enforced. One way to preserve such a judgment is to file an application for renewal under the terms of Code of Civil Procedure sections 683.120 and 683.130 before the expiration of the 10-year enforceability period. Such application automatically renews the judgment for a period of 10 years.' [Citation.]" (*Rubin v. Ross* (2021) 65 Cal.App.5th 153, 161, italics omitted.)

"Pursuant to Code of Civil Procedure section 683.170, subdivision (a), a 'renewal of a judgment . . . may be vacated on any ground that would be a defense to an action on the judgment.' 'The judgment debtor bears the burden of proving, by a preponderance of the evidence, that he or she is entitled to relief under [Code of Civil Procedure] section 683.170. [Citations.] On appeal, we examine the evidence in a light most favorable to the order under review and the trial court's ruling for an abuse of discretion.' [Citation.]" (*Rubin v. Ross*, *supra*, 65 Cal.App.5th at p. 161.) "Questions of law are reviewed de novo." (*American Contractors Indemnity Co. v. Hernandez* (2022) 73 Cal.App.5th 845, 848.)

On appeal, Right Healthcare once again cites the priority-of-jurisdiction rule, which is also known as the doctrine of exclusive concurrent jurisdiction. However, we conclude Right Healthcare is judicially estopped from invoking this rule.

"The doctrine of ' "exclusive concurrent jurisdiction" ' provides that when two or more courts have subject matter jurisdiction over a dispute, the court that first asserts jurisdiction assumes it to the exclusion of the others. [Citations.]" (*BBBB Bonding Corp. v. Caldwell* (2021) 73 Cal.App.5th 349, 374 (*BBBB Bonding*).) It "is similar to an affirmative defense and the remedy for its applicability is a stay of the second action." (*People ex rel. Garamendi v. American Autoplan, Inc.* (1993) 20 Cal.App.4th 760, 769 (*Garamendi*).) The purpose of the doctrine of exclusive concurrent jurisdiction " 'is to avoid unseemly conflict between courts that might arise if they were free to make contradictory decisions or awards at the same time or relating to the same controversy'

11.

and 'to protect litigants from the expense and harassment of multiple litigation.' [Citation.]"  (*BBBB Bonding*, *supra*, at p. 374.)  The doctrine has been raised not only in situations involving two superior courts (see, e.g., *Garamendi*, *supra*, at pp. 769–770) but also those enmeshing two departments of a single superior court (see, e.g., *Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1449–1450).

Here, the record establishes Ebling petitioned for dissolution of marriage in 2005 and the partial judgment of dissolution entered in 2008 reserved the family court's jurisdiction over the valuation and division of community assets, e.g., Right Healthcare. In 2011, while the dissolution action was ongoing, Right Healthcare sued Ashli Healthcare, Diaz, Ernesto Diaz, and Pena.  In turn, Ashli Healthcare and Diaz countersued Right Healthcare.  On May 7, 2012, Ashli Healthcare, Diaz, Ernesto Diaz, and Pena moved to stay the civil matter pending resolution of the dissolution action. They contended (1) "many of the issues presented by Right Healthcare in the Civil Action"—e.g., whether Diaz breached his spousal fiduciary duty, whether Right Healthcare "has suffered a diminution in value" as a result of purported misconduct— were brought up in the dissolution action and would necessarily be resolved by the family court; and (2) there existed "a substantial probability" of "inconsistent rulings" if the civil matter and dissolution action proceeded simultaneously.  Right Healthcare acknowledges on appeal the aforementioned argument "underscored the reason for priority of jurisdiction and its application . . . ."  In opposing the stay motion, Right Healthcare stressed the civil matter involved a "diversity of parties" "not confined to Mr. Diaz" and "[c]omplex civil issues" that "go far beyond the valuation of [Right Healthcare]'s financial viability" between 2007 and 2009.  It further maintained Ashli Healthcare and Diaz's cross-complaints "cannot be resolved by the [f]amily law court."  The court denied the stay motion, siding with Right Healthcare.

Ultimately, the court struck Right Healthcare's complaint and answer to the cross-complaints and entered the October 11, 2012 default judgment in favor of Ashli

12.

Healthcare and Diaz. After Ashli Healthcare and Diaz applied to renew the judgment nearly a decade later, Right Healthcare moved to vacate the renewal because (1) the family court "obtained jurisdiction over this marital dissolution and the corresponding community estate" in 2005; (2) the various claims in the civil matter "are a part of the community estate," were raised "during the dissolution process," and were "already within the jurisdiction of the family court"; and (3) "the civil court cannot untie these claims from the family court's jurisdiction as they are so intrinsically intertwined." Similarly, in its appellate brief, Right Healthcare states "[t]he substance of the civil case here involve[s] quintessential family law issues." In other words, in attempting to vacate the renewed judgment, Right Healthcare took a stance completely at odds with its earlier position vis-à-vis the stay motion.[2]

"The doctrine of judicial estoppel, sometimes called the doctrine of ' " 'preclusion of inconsistent positions' " ' [citation] precludes a party from obtaining an advantage by asserting one position, and then seeking a second advantage by asserting an incompatible position. [Citation.] The doctrine is applied ' " 'to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process.' " ' " (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 448–449 (*Minish*).) "Courts apply judicial estoppel when: (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position; (4) the two positions are completely inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." (*County of Imperial v. Superior Court* (2007) 152 Cal.App.4th 13, 34.) " ' " ' "The policies underlying preclusion of inconsistent positions are 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings.' " . . . Judicial estoppel is "intended to protect

---

[2] At oral argument, appellate counsel for Right Healthcare conceded this point.

against a litigant playing 'fast and loose with the courts.' " ' " [Citation.] "It seems patently wrong to allow a person to abuse the judicial process by first [advocating] one position, and later, if it becomes beneficial, to assert the opposite." [Citation.]' [Citations.]" (*Minish*, *supra*, at p. 449.)

Right Healthcare suggests principles of estoppel cannot apply because the civil court that entered the default judgment lacked subject matter jurisdiction, rendering said judgment void. "Essentially, jurisdictional errors are of two types. 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.] When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack at any time.' [Citation.]" (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660; accord, *People v. The North River Ins. Co.* (2020) 58 Cal.App.5th 300, 312.) "However, 'in its ordinary usage the phrase "lack of jurisdiction" is not limited to these fundamental situations.' [Citation.] It may also 'be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.' [Citation.] . . . . When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable. [Citations.] That is, its act or judgment is valid until it is set aside, and a party may be precluded from setting it aside by 'principles of estoppel, disfavor of collateral attack or res judicata.' [Citation.] Errors which are merely in excess of jurisdiction should be challenged directly, for example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final unless 'unusual circumstances were present which prevented an earlier and more appropriate attack.' [Citations.]" (*People v. American Contractors*

*Indemnity Co.*, *supra*, at p. 661; accord, *People v. The North River Ins. Co.*, *supra*, at pp. 312–313.)

In order to escape the "harsh consequences" (*Minish*, *supra*, 214 Cal.App.4th at p. 449) of judicial estoppel, Right Healthcare must show the civil court's judgment was void and not simply voidable. It posits the doctrine of exclusive concurrent jurisdiction renders the judgment void because it conferred exclusive subject matter jurisdiction to the family court. As explained, Right Healthcare cannot raise such an assertion because it diametrically contradicts the position it took when it successfully opposed the stay motion, i.e., the civil court had subject matter jurisdiction. In other words, judicial estoppel forestalls Right Healthcare's argument against judicial estoppel.

Moreover, even if we indulge Right Healthcare and allow it to rely on the doctrine of exclusive concurrent jurisdiction, "the rule of exclusive concurrent jurisdiction is a judicial rule of priority or preference and does not divest a court, which otherwise has jurisdiction of an action, of jurisdiction." (*Garamendi*, *supra*, 20 Cal.App.4th at p. 769; see *BBBB Bonding*, *supra*, 73 Cal.App.5th at p. 374 [priority-of-jurisdiction rule "a policy rule" and "application of the rule in a given case depends upon the balancing of countervailing policies"]; see also *County of San Diego v. State of California* (1997) 15 Cal.4th 68, 88 ["[A] court that refuses to defer to another court's primary jurisdiction 'is not without jurisdiction.' "].) It "is not 'jurisdictional' in the sense that failure to comply renders subsequent proceedings void." (*Garamendi*, *supra*, at p. 772.) Thus, at most, the civil court's judgment was voidable, meaning Right Healthcare could still be precluded from setting it aside by judicial estoppel.

In view of the totality of the circumstances, we exercise our discretion (see *Minish*, *supra*, 214 Cal.App.4th at p. 449) and affirm the order on the basis of judicial estoppel.

**DISPOSITION**

The November 8, 2022 order denying the motion to vacate renewal of the October 11, 2012 default judgment is affirmed.  Costs on appeal are awarded to respondents Ashli Healthcare, Inc. and Heriberto Diaz.


                                                                                  DETJEN, J.
WE CONCUR:


LEVY, Acting P. J.


PEÑA, J.

16.